## No. 5701.

### W. E. SHINN ET AL. v. H. P. HICKS ET AL.

1. EVIDENCE—ANCIENT INSTRUMENTS.—A bounty warrant forty-six years
old, which had been recognized as genuine, and acted on for more than
forty-five years, found in the custody of the general land office, where
it properly belonged, when free from suspicion on account of anything
apparent on its face, was held to prove itself as an ancient instrument,
when an affidavit that it was a forgery had been filed, there being no
evidence offered to sustain the affidavit.

2. EVIDENCE.—It is competent for the Commissioner of the General Land
Office to testify what meaning is conveyed by the record entries on a
tabular statement, on record in his office, as understood by those offi-
cially employed under him.

3. SAME.—On an issue involving the fraudulent alteration of a bounty warrant,
a witness who, as an officer, had taken evidence of the transfers made by
parties claiming under it, and who had witnessed the execution of some
of them, was permitted to state: "I know that the land warrant and
the transfers attached thereto are all genuine, honest instruments, and
entitled to full faith and credit." *Held,* no error; the objecting party
had a right, if he desired, to examine the witness and ascertain upon
what facts he based his statement that the certificate itself was genu-
ine.

4. BOUNTY WARRANT—PRESUMPTION.—A bounty warrant issued by the
Secretary of War of the Republic, in 1838, on its face declared that the
beneficiary, by his attorney, named therein, was entitled to the land,
"and to sell, alienate, convey and donate the same, and to exercise all
rights of ownership over it." In a suit, begun in 1880, involving title
claimed to have been derived through the attorney named, *held:*

(1) That it would be presumed, in the absence of evidence to the con-
trary, after so great a lapse of time, when all the parties having knowl-
edge of the facts were dead, that the Secretary of War acted within the
scope of his authority.

(2) The burden of proving that the words were inserted in the warrant
through fraud, accident or mistake, rested on the party asserting it.

(3) It was not error to refuse a charge which required the jury to be-
lieve that, unless there was evidence that the words defining the scope of
the agency, contained in the certificate, were inserted there by the au-
thority of the principal, they could not presume that there was a power
of attorney from the original beneficiary in the bounty warrant, to the
agent, to transfer the same.

APPEAL from Wise.    Tried below before the Hon. F. E. Piner.

*S. Hodges* and *L. A. Crane*, for appellants, cited Moss v. Berry, 53 Texas, 633, 634; Mast v. Tibbles, 60 Texas, 307; Mills v. Herndon, 60 Texas, 357; Johnson v. Newman, 43 Texas, 639, 342; Williams v. Conger, 49 Texas, 601; Reed v. West, 47 Texas, 248.

*A. M. Carter* and *A. M. Jackson*, for appellees, cited Johnson v. Timmons, 50 Texas, 521; Holmes v. Coryell, 58 Texas, 680; Johnson v. Newman, 43 Texas, 642; Satterwhite v. Rosser, 61 Texas, 172; Burkett & Murphy v. Scarborough, 59 Texas, 498, 499.

STAYTON, ASSOCIATE JUSTICE.    The appellants claim title to the land in controversy through inheritance from George W. Lemoyne and through conveyances from his heirs.    The land was patented to Lemoyne December 12, 1860, and there is no claim that the appellants are entitled to protection as innocent purchasers.

The land was granted under a bounty warrant issued to George W. Lemoyne by Charles Mason, Secretary of War, on November 20, 1838, which, on its face, declared that "the said George W. Lemoyne, by his attorney, T. D. Tomkins, is entitled to said land, or to sell, alienate, convey and donate the same, and to exercise all rights of ownership over it."

On January 8, 1839, Tomkins, by a writing on the back of the bounty certificate, in consideration of two hundred and fifty dollars, recited to be paid at the time, conveyed it to Uri Holbrook, who, by a paper attached to his certificate, on April 29, 1847, conveyed it to Benjamin F. Wright.    The due execution of all these conveyances was fully proved, and through them the appellees claim.

On October 6, 1851, Wright made a contract with D. R. Mitchell to locate the certificate, and he, in accordance therewith, soon after did so, and returned the certificate with the survey made under it to the general land office.    On July 3, 1860, Thomas Green, as the agent of Lemoyne, filed a protest in the general land office against the issuance of a patent to any person other than Lemoyne.    Whether this was done by request of Lemoyne, does not appear, further than that the agent had been requested by Lemoyne, about that time, to look after his land claim for three hundred and twenty acres of land.    The patent issued December 12, 1860, and was forwarded to Lemoyne, May 6, 1861.

The original certificate, with the transfers thereon and attached to it, was withdrawn from the land office under an order of the

district court, an affidavit having been filed alleging that one of the plaintiffs believed the words "by his attorney, T. D. Tomkins," found on the face of the certificate, was a forgery.

The original papers, under direction of the district court, have been sent up for our inspection, and we deem it proper, in this connection, to say that an inspection of the certificate exhibits no fact which would cause us to suspect that the words alleged to have been forged were written by any other person than the one who wrote the certificate, nor that they were inserted at a time subsequent to the issuance of the certificate.

This action was brought on May 1, 1880, a short time prior to which the defendants were in possession.

It is urged that the court erred in permitting the defendants to introduce in evidence the original certificate, the affidavit before referred to having been filed, no direct proof having been made that the words alleged to have been fraudulently inserted were in the certificate when it was signed by the Secretary of War.

We think there was no error in this ruling. The certificate was more than fifty-six years old when offered in evidence; it had been acted upon as is shown by uncontroverted evidence for more than forty-five years; it came from the proper custody and was free from suspicion on account of any thing apparent on its face. That the instrument was of such age and produced under such circumstances as to entitle it to admission in evidence as an ancient instrument, without proof of its execution, is too clear. The appellant claimed under it, and no question can be made as to the date of its execution. It stood before the court, under the rules of the common law as though its execution had been proved, and had there been no evidence before the court, other than the instrument itself, we are of the opinion that an inspection of it would have required the court to admit it, notwithstanding the affidavit of forgery, made by a person who had no knowledge of the instrument on which a reasonable belief that it was not in its entirety, genuine, could have been based, and who was unable to prove a single fact tending to show that the entire instrument was not, when offered, just as was it nearly half a century before, when it left the hands of the Secretary of War. The certificate was properly admitted in evidence. (Holmes v. Coryell, 58 Texas, 687; Pasture Company v. Preston, 65 Texas, 451; Brown v. Simpson's Heirs, 2 Southwestern Reporter, 646.)

The deposition of the Commissioner of the General Land Office

was taken, and as parts of his answers he attached certain copies of the records of his office, which were kept in tabular form, showing when and by whom the certificate and survey made under it were returned to his office. The witness was permitted to state that he "understood from this record (copy of which he had attached) that D. R. Mitchell returned a set of field notes on the thirtieth day of August, 1853, of a survey of three hundred and twenty acres in the name of Geo. W. Lemoyne," and it is urged that this was error. There was no error in this, for had the entry not been such as to explain itself it would have been proper for the Commissioner to have stated what was intended to be understood by the persons engaged in that office from the entry, he having knowledge how the records were kept.

A witness who was well acquainted with the parties to the several transfers of the certificate, who saw some of them executed, knew the handwriting of some of the persons who conveyed, and, as an officer, took proof of their execution after stating those facts fully and minutely, stated: "I know that the land warrant and the two transfers attached thereto are all genuine, honest instruments and entitled to full faith and credit." This evidence was objected to on the ground that it was the mere opinion of the witness, which he was not qualified to give, and because it was a conclusion of law. The objection was overruled, and, we think, correctly. The witness had stated fully the facts which bore on the genuineness of the several conveyances, as well as his means of knowledge of those facts, and so far as we can know from the record before us, he may have had actual knowledge that the certificate was just as it was when it passed from the hands of the Secretary of War. If the appellant desired to ascertain on what facts he based his declaration that the certificate was genuine he should have been examined on that matter. There was no controversy as to the genuineness of the certificate; that had been established by the court of claims, and all right claimed by the appellees is founded upon it.

The plaintiffs asked the following instruction, which was refused: "The plaintiffs have filed an affidavit of forgery to the words 'by his attorney, T. D. Tomkins,' inserted in the certificate of Geo. W. Lemoyne, and say that the same is a forgery, and were inserted without the authority of the said Geo. W. Lemoyne, and the burden of proof is on the defendants to show that the said words were inserted therein by the said Geo. W. Lemoyne or his authority, and unless you find from the evi-

dence, that the words were inserted in said certificate by the authority of said Geo. W. Lemoyne, then you can not presume that there was a power of attorney or authority from Lemoyne to T. D. Tomkins to secure and transfer his certificate, and you will find for plaintiffs."

This charge was refused, and, we think, correctly.

The court had already instructed the jury that, to authorize a verdict for the defendants, they must believe from the evidence that Lemoyne authorized Tomkins to sell the certificate. They were also instructed as to the presumptions arising, if they found it to be a fact that the words claimed to have been forged, were inserted by the Secretary of War at the time he issued the certificate. If the instrument is now as it was when signed and delivered by the Secretary of War, the conclusion is almost irresistible that Tomkins exhibited to him either an informal transfer of the certificate made by Lemoyne, or power of attorney which authorized him to apply for, receive and sell the certificate, and the charge asked would have precluded the jury from finding this to be true, unless there was proof that Lemoyne authorized the Secretary of War to insert the words objected to in the certificate, or unless Lemoyne inserted the words himself, when a power of attorney or other authority given by Lemoyne to Tomkins, authorizing the latter to receive and transfer the certificate, may have been deemed sufficient by the Secretary of War to authorize him to insert the words, though no express direction may have been given to him to do so.

The charge would further have precluded the jury from giving due weight to the presumptions that legitimately arise from the fact that Tomkins received the certificate from the officer who issued it, or soon after came into possession of it, and exercised the power to sell it, which the grantee did not discover for a long period of time, if ever.

The court instructed the jury that, if they believed the words in the certificate were inserted by the Secretary of War, it would be presumed, after so great a lapse of time, in the absence of evidence to the contrary, that he acted within the scope of his authority, and that, in such case, the burden of proving that the words were inserted through fraud, inadvertence or mistake rested upon the plaintiffs. This ruling was held correct on the former appeal of this case, decided at the November term, 1882.

If the jury believed the facts to exist which the court instructed would estop George W. Lemoyne and those claiming through

him from claiming the land, it is unimportant that the facts would not technically have created an estoppel, for the facts stated would vest the superior right in those who assert right through the conveyance of the certificate made by Tomkins.

The facts did not justify the giving of the charge through which the appellants sought to have the jury instructed that lapse of time would bar the claim of the defendants. The ninth assignment has been considered in some of those presenting questions already considered. The long time which elapsed, after the certificate was transferred by Tomkins, before any effort was made to question its validity, justified the court in giving that part of the charge which had reference to the acquiescence of the grantee in the sale made by Tomkins, and as to the presumptions arising from such delay.

A part of the charge which, in effect, informed the jury that an adverse possession of the certificate for two years, before it was located, would give title to it by limitation, was incorrect; but there is no assignment of error through which a revision of this ruling is asked. We therefore must deem this matter waived.

All the parties are shown to be dead who can be presumed to have known why the Secretary of War so drew the certificate as to authorize its transfer by Tomkins, and it seems to us that, under the evidence, no other disposition of this case than that made could legally have been made.

The judgment will be affirmed.

*Affirmed.*