DAVID S. STANLEY ET AL. v. MARY W. SCHWALBY ET AL.

No. 7807.

1. **Bona Fide Purchaser.**—D. was common source of title. He conveyed the land to Duncan in 1860 by warranty deed reciting payment of the purchase money. This deed was not recorded until 1889. D. died testate and his property went to his widow, who quitclaimed the land to the city of San Antonio, informing the mayor of the unrecorded deed to Duncan. The city donated the land to the United States. In trespass to try title by heirs of Duncan against United States Army officers in possession, *held*, that the title of plaintiffs was valid, and the facts negatived good faith in the city of San Antonio or the United States in the purchase of said land.

2. **Nonpayment of Purchase Money.** — That Duncan may not have paid the purchase money did not affect the right of his heirs to recover the land against any claimant but the vendor.

3. **Suit Against United States Government.** — While the United States can not be sued except in such cases as may be prescribed by Congress, yet the officers and agents of that government, when holding possession of property for public use in their official character, may be sued in any court of competent jurisdiction by the owner of such property, and such relief given against them as might be if their holding was not official.

4. **Same.**—Such suit against United States officers in possession would not bar the government from resorting to any lawful remedy for the recovery of any right it may have therein.

5. **Intervention.** — That an intervenor bought an interest in the land in controversy from one not a party subsequent to the filing of the suit, in no way affects his right to intervene and assert such title as he may have.

6. **Limitation Against and in Favor of the United States.**—As no action can be maintained against the government, no limitation would run in its favor against the owner of land occupied by the United States.

7. **Same—Statute of Limitations.**—The United States, whether named in a State statute of limitations or not, is not bound thereby, and unless therein expressed in the statute the rule is well established that such statutes are not applicable to a State, or to the United States, whether appearing as plaintiff or defendant.

8. **When Limitation Begins to Run.**—Limitation runs when the right or cause of action accrues, and not before. This right does not exist unless facts exist which authorize the owner to sue, and the law allows him to sue the party aggressing upon the property claimed.

9. **Power of United States District Attorney.**—We are not referred to any Act of Congress which empowers the Attorney-General or the United States district attorney to make the United States a party defendant in an action in the State courts of trespass to try title against United States Army officers to recover land occupied by them as an army post. In absence of such a law jurisdiction can not be conferred upon the State court by an appearance entered by the United States district attorney.

10. **Army Officers.**—Army officers occupying land without the consent of the owner, and without authority of law, stand under the same liability as would a private citizen. That such occupation was taken as military officers and under orders from their superiors, would not affect such liability.

11. **Case in Judgment.**—Plaintiff sued General Stanley and others, army officers, stationed near San Antonio, for recovery of land donated by the city to the United States for an army post. The defendants were represented by the United States district attorney, under orders from the Attorney-General. The district attorney also appeared for the United States, pleaded limitation, suggested improvements, etc. *Held:*

1. The plea of limitations by the United States was properly stricken out.

2. Such facts, however, might be considered as an evidence of a superior outstanding title in the government.

3. The district attorney could not make the United States a party defendant by entering an appearance officially.

4. As the United States was not a legal party to the suit, it was error to render judgment in its favor for value of improvements.

5. The army officers are liable personally for the damages for the illegal use and occupation.

Appeal from Bexar. Tried below before Hon. W. W. King.

*A. J. Evans*, United States District Attorney, and *H. C. Carbaugh*, for appellants.— 1. The United States of America being a great corporation, could take and hold the land in question for the purposes set out, and when brought into court stood upon the same grounds as other defendants. Const. U. S., sec. 8, subdiv. 17; Laws of Texas, title "Cession," p. 54; Van Bracken v. Tennessee, 117 U. S., 154; Rev. Stats., art. 3191.

2. An intervenor is one who comes into a depending suit, with leave of the court, and sets up rights in the matter of litigation against plaintiff and defendant, and must have leave of the court. Rapalje's Law Dictionary.

3. The court erred in not adjudging the land to be the property of the defendants upon their proof of innocent purchasers.

4. The court erred in not adjudging the land to be the property of the defendants upon their pleadings and proof of estoppel in pais. Story Eq. Jur., 12 ed., secs. 1536–1539, 1538a, 1539a, 1541, 1546.

The McMillan heirs stood by from 1876 to 1889, thirteen years, and saw the United States beautify and improve this lot in the very heart of her military reservation, expending large sums thereon.

*C. F. Carsner* and *Geo. C. Altgelt*, for appellees.— 1. The court below never having held that defendants proper could not set up the statutes of limitations, that question is not before the court, any further than the holding of the court that the United States could not plead limitations.

2. The United States government is neither protected nor bound by State statutes of limitation. United States v. Thompson, 98 U. S., 486; Doe v. Johnston, 92 U. S., 445; United States v. Insley, 130 U. S., 263; Lindey v. Miller, 6 Pet., 666; United States v. Railway, 118 U. S., 120; Ang. on Lim., secs. 39, 54, 63; Busw. on Lim., secs. 96–102.

3. The United States district attorney, acting under the direction of the Attorney-General of the United States, in absence of an Act of Congress authorizing such action, had no authority to waive in behalf of the United States the exemption from being sued or impleaded in this suit, or submitting for adjudication in the courts of the State of Texas the rights of the United States of America. Carr v. United States, 8 Otto, 433.

STAYTON, Chief Justice.—This is an action of trespass to try title, brought by Mrs. Schwalby against David S. Stanley and three other persons; and she alleged, that she was the owner of an undivided one-third of the lot, that defendants entered without title, and there was prayer for possession of the entire lot.

Joseph Spence intervened in the case, and asserted title to one-third of

the lot through a conveyance made to him by one of the three heirs of Duncan B. McMillan, deceased, who was also the father of Mrs. Schwalby.

Defendant Stanley, for himself and the others, answered, asserting that as individuals they did not claim and had no title to the lot, but that they were lawfully in possession thereof as officers and agents of the United States of America.

They asserted that the United States had complete title, and entered the plea of " not guilty," which was stated to be done officially.

The district attorney for the United States, declaring that he acted through instructions from the Attorney-General, filed an answer for the United States, in which the defendants joined.

This answer, after stating that the defendants as individuals made no claim to the property, contained a plea of " not guilty," alleged that the United States and their vendor were bona fide purchasers; pleaded an estoppel claimed to grow out of the fact that plaintiff and intervenor asserted no claim to the lot while the government of the United States was improving it, with other property, to be used as military headquarters for her army in Texas; pleaded the statutes of limitation of three, five, and ten years, and, for the United States, made claim for valuable improvements.

The plaintiff filed exceptions to so much of the answer as purported to make the United States a party defendant, asserting that no authority existed in the attorneys representing the parties, nor in the Attorney-General, to make the United States a party defendant to this action in a State court, and raising the question of jurisdiction generally in so far as the United States was concerned.

The pleas of limitation filed in behalf of the United States were also excepted to, as were the other pleas filed in that behalf. The court sustained the exceptions to the pleas of limitation, and also to the claim for improvements, but overruled all other exceptions.

The claim for improvements was amended, and on trial a judgment was rendered in favor of plaintiff and intervenor against the original defendants and the United States, establishing their title to two-thirds of the lot, and awarding to them a writ of possession for the whole, the issuance of which was suspended until such time as they should pay for the improvements or become entitled to the writ by the failure of the United States to pay the assessed value of the lot.

The court found, that the United States had made improvements in good faith of the value of $1720, and that the value of the use of the lot was $200, while the value of the lot was found to be $2500; and on these findings the judgment usual in trespass to try title was rendered; from which all parties gave notice of appeal, which was perfected by the original defendants and the United States, with supersedeas bond, and all parties have assigned error.

It was agreed that Anthony M. Dignowity was common source of title. Plaintiff and intervenor proved that Dignowity, through attorney, conveyed the lot in controversy to Duncan B. McMillan, by deed of date May 9, 1860, which recited a consideration paid, contained claim of general warranty, and was duly acknowledged on the day it was executed, but was not recorded until September 30, 1889.

The death of McMillan was shown, and it was proved that only three children survive him, and that plaintiff is one of those and the vendor of intervenor another.

Dignowity died testate, and by the terms of his will, which was duly probated in 1875, his property passed to his widow, who on May 1, 1875, by quitclaim deed, conveyed the lot in controversy to the city of San Antonio, describing it as the lot " known as the McMillan lot."

The city of San Antonio conveyed this lot, and other property conveyed by Mrs. Dignowity to it, to the United States, by deed of date June 16, 1875. At the time the city of San Antonio bought from Mrs. Dignowity she informed the mayor of the claim of McMillan, and refused to give other than a quitclaim deed to the lot.

The city donated the lot in controversy, and other land, to the United States, and the United States district attorney, whose duty it was made to examine the title before the donation was accepted, was informed of the conveyance to McMillan, but he testified that he satisfied himself that McMillan had not paid all the purchase money, and he therefore advised that the government would get good title.

Under this state of facts, there can be no doubt of the validity of the title asserted by plaintiff and intervenor, and it leaves no foundation for the claim that the city of San Antonio or the United States was an innocent purchaser.

Title to the lot passed to McMillan, whether all the purchase money was paid or not, and no persons other than McMillan and his vendor had any interest in that matter.

Neither by pleadings nor proof did the original defendants assert any claim to the lot, nor such a possession or claim of right in themselves as would support any plea of limitation; and the judgment against them is correct, if, holding as they did officially, the action might be maintained against them as against other wrongdoers.

Under the decision in United States v. Lee, 106 United States, and the cases therein cited, it must be held, while the United States can not be sued, except in such cases as may be prescribed by Congress, that the officers and agents of that government, when holding possession of property for public use in their official character, may be sued in any court of competent jurisdiction by the owner of such property, and such relief given against them as might be if their holding was not official.

The plea of these defendants was in effect an assertion of a superior out-

standing title in the United States, and the court had power to examine and determine that question, with a view to ascertain and determine the rights of the parties properly before the court, although its decision on the question of title or right to possession would not bar the right of the United States to resort to any lawful remedy for the maintenance of any right it may have to the property, if it was not properly made a defendant in the case; for, as said in the case referred to, under such facts, " the United States may proceed by bill in chancery to quiet its title, in aid of which, if a proper case is made, a writ of injunction may be attained. Or it may bring an action of ejectment, in which, on a direct issue between the United States as plaintiff and the present plaintiff as defendant, the title 'of the United States could be judicially determined. Or, if satisfied that its title has been shown to be invalid, and it still desires to use the property, or any part of it, for the purposes to which it is now devoted, it may purchase such property by fair negotiation, or condemn it by a judicial proceeding, in which a just compensation shall be ascertained and paid, according to the Constitution."

The grounds on which actions against officers of the United States are held to be maintainable in cases like this are fully stated in United States v. Lee, from which the Supreme Court of the United States has shown no disposition to recede, although the decision was by a divided court. Hans v. Louisiana, 134 U. S., 16; In Re Ayers, 123 U. S., 501, 511–514.

The pleas of estoppel and stale claim are so manifestly without foundation that it is not necessary to further notice them.

That intervenor acquired title after the action was brought by Mrs. Schwalby was a matter in no way affecting his right to assert his title when and in the manner he did.

If the United States had been properly before the court as a defendant, we are of opinion that the pleas of limitation should have been, as they were, stricken out; for when no action could be brought against them, limitation ought not to run in their favor.

It is held, that the United States, whether named in the State statute of limitations or not, is not bound thereby (United States v. Thompson, 98 United States, 486); and, unless otherwise expressed in the statute, the rule is well established, that such statutes are not applicable to a State or to the United States. Not applicable to them when they appear as defendants any more than when they appear as plaintiffs; and this is so for reasons of public policy in the one case, and from necessity and justice in the other; for it would be contrary to reason to hold that it was the intention of the law making power that a right should be barred by failure to bring an action within a prescribed time, when at the same time right to bring an action was denied.

Limitation runs when right or cause of action accrues, and not before·

and this does not exist unless facts exist which authorize the person asserting claim to ask relief from some court of justice against the person who ought to make reparation. It involves the existence of the right to sue as well as of facts deemed sufficient, in a general sense, to constitute a cause of action; and the right to sue may depend on the existence of a person to be sued, or upon the denial of the right to sue a State or other corporation, which, but for such legal denial, would be subject to suit.

In Baxter v. The State, 10 Wisconsin, 454, it was held, that the State was entitled to make the defense of limitation in a suit brought against it, although the right was not expressly given; and the argument in support of the ruling seems to be drawn from rulings based on prerogative of English kings, under which it was held, that while the king was not bound by a statute unless specially named, "he shall take the benefit of a statute, though he be not named."

It appears from the opinion, however, that the statutes of that State authorized suits to be brought against the State as against persons, and required these to be determined "as *the law*, and every right of the case may require."

As late as 1876, it was held in England, in an action by a subject against the queen in her official character, that she could not take advantage of the statutes of limitation, and this was based on the proposition, that the acts of Parliament in regard to statutes of limitation "have relation only to the course of procedure between subject and subject." Rustornjee v. The Queen, L. R. 1 Q. B. D., 487.

Even if the defendants might have set up any defense the United States might have set up, for the purpose of showing outstanding title in the latter, the exceptions to the pleas of limitation were properly sustained.

It is urged by cross-assignment of error, that the court erred in overruling an exception which questioned the power of the United States district attorney, even under the direction of the Attorney-General of the United States, to submit the government to the jurisdiction of the state court, and thereby clothe that court with jurisdiction to render a judgment which would bind the United States.

The instructions of the Attorney-General are not found in the record, and we are not referred to any act of Congress which empowers him to make the United States a party, either plaintiff or defendant, to an action in a State court, and in the absence of such a law jurisdiction can not be thus conferred. Carr v. United States, 98 U. S., 433; United States v. Lee, 106 U. S., 196.

It is probably true that it was intended by the Attorney-General that this action against the officers of the government should be defended by the United States district attorney, as were cases above cited and others therein referred to, but not that the United States should be made a defendant; but be this as it may, we are of the opinion that the exception

should have been sustained, and that the District Court did not acquire jurisdiction over any controversy between the United States and the plaintiff and intervenor.

Many objections are made to the judgment in favor of the United States for the value of improvements made on the lot, some of which we would have to sustain were it necessary to pass upon them; but in view of the fact that the court had no jurisdiction to render judgment either in favor of or against the United States, the judgment in so far must be set aside, without reference to the validity of any claim that might be made for the value of improvements were there parties before the court between whom such an issue could be tried.

Defendants admitted that they held possession of the lot, and it is not urged that the judgment for rents is greater than the reasonable value of the use while they were in possession; but the question arises, whether a judgment for this can be rendered against them, holding, as they did, as officers of the United States government, presumably under orders from their superiors.

There is no doubt that under some circumstances a military officer may seize and hold private property lawfully, but as there can be no claim that the property in controversy was taken possession of and held under such circumstances, it becomes necessary to consider when this may lawfully be done.

That the lot in controversy does not belong to the United States is clear; and that there is no law under which defendants could lawfully take possession of and hold it, is equally clear.

This being true, the majority of this court are of opinion that defendants stand under the same liability as would any private citizen who had taken possession of and held the property; and the fact that this may have been done by them as military officers of the United States, under the orders of their superiors, a fact neither alleged nor proved—which, however, might well be presumed—in no manner affects their liability, for no such orders could lawfully be given.

Under the decisions of the Supreme Court of the United States, we do not feel authorized to consider this an open question.

In Mitchell v. Harmony, 13 Howard, 128, an officer of the United States Army was held liable to a person whose property he had taken possession of, under the orders of his superior, without intent to subserve any personal interest, and solely with a view to the public welfare, which it was believed would be promoted thereby. The seizure was made during the war with Mexico, and within the territory of that nation.

In disposing of the case, it was said: "If the power exercised by Colonel Doniphan had been within the limits of a discretion confided to him by law, his order would have justified the defendant, even if the commander had abused his power or acted from improper motives. But we

have already said that the law did not confide to him a discretionary power over private property. Urgent necessity would alone give him the right; and the verdict finds that this necessity did not exist. Consequently the order given was an order to do an illegal act—to commit a trespass upon the property of another—and can afford no justification to the person by whom it was executed. * * * And upon principle, independent of the weight of judicial decision, it can never be maintained that a military officer can justify himself for doing an unlawful act by producing the order of his superior."

In the case a judgment for more than $100,000, which included interest and costs, was rendered.

In another case, in which an action was brought against military officers of the United States for an illegal seizure of private property, they were held liable for the damages resulting; and in reference to a plea setting up the command of a superior officer, the court said: "It is a sufficient answer to the plea, that the defendants were subordinate officers acting under the orders of a superior, to say, that whatever may be the rule in time of war and in the presence of actual hostilities, military officers can no more protect themselves than civilians in time of peace by orders emanating from a source which is itself without authority. * * * The objection fatal to all this class of defenses is, that in that locality they were utterly without any authority in the premises; and their honest belief that they had is no defense in their case more than in any other, where a party, mistaking his rights, commits a trespass by forcibly seizing and taking away another man's property. There was here no process from a competent court, nor any order from any source having authority, and there is, therefore, no defense." Bates v. Clark, 95 U. S., 209.

Referring to the case of the United States v. Lee, that court again said: "In that case the plaintiffs had been wrongfully dispossessed of their real estate by defendants, claiming to act under the authority of the United States. That authority could exist only as it was conferred by law, and as they were unable to show any lawful authority under the United States, it was held, that there was nothing to prevent the judgment of the court against them as individuals for their individual wrong and trespass." In Re Ayers, 123 U. S., 501.

Cases might be multiplied upon this subject, and many will be found cited under the following cases: Wilson v. Mackenzie, 42 Am. Dec., 51; Farmer v. Lewis, 89 Am. Dec., 610; Hogue v. Penn, 96 Am. Dec., 274.

Defendants, under the law, were trespassers, though acting under a sense of duty; and though this may seem harsh, we see no legal ground on which they can be relieved from that full liability for the wrong done to plaintiff and intervenor to which they would be subject had they held as private persons, under claim of right in themselves or as tenants of some other person. Congress has not provided any judicial tribunal at

whose hands parties may have redress for such injuries as plaintiff and intervenor have received through officers of the United States (Gillons v. United States, 8 Wallace, 269), and the plainest principles of justice require that those who have unlawfully held possession of the property of appellees shall not only surrender it, but also compensate for its use.

The judgment entered by the court below will be set aside, and judgment will be here rendered dismissing the United States from the case as a party, and in favor of plaintiff and intervenor against David S. Stanley, William B. Gibson, Samuel F. Cushing, and J. C. Bailey for the land described in the petition, for which writ of possession may issue; and judgment will be further entered in favor of plaintiff and intervenor against defendants and the sureties on their appeal bond for the sum of $200, with interest thereon at the rate of 8 per cent per annum from March 24, 1890, until paid, together with all costs incurred in this court and in the court below, for which execution may issue.

It is so ordered.

*Reversed and rendered.*

Delivered March 4, 1892.

Justice HENRY dissents from so much of the above opinion as holds the defendants liable for rent of the property.