### H. L. HENSEL ET AL. V. B. M. KEGANS ET AL.

#### No. 1429.

1. **Innocent Purchaser—Land Certificate—Heirs of Wife.**—The purchaser of a headright certificate from the husband to whom it was issued takes it with constructive notice of the claim of the children of the wife, then deceased. Following Hill v. Moore, 85 Texas, 335.

2. **Equitable Title—Stale Demand.**—The doctrine of stale demand does not bar the defendant in trespass to try title from availing himself of an equitable title as a defense, although he may have pleaded such equitable title in a cross-action.

3. **Trespass to Try Title—Lien for Taxes and Expenses.**—Money expended by the holder of the legal title to a land certificate in locating the land and paying taxes thereon, constitutes a lien upon the equitable interests of other parties owning an interest in the certificate.

APPEAL from Haskell. Tried below before Hon. C. P. WOODRUFF.

*A. C. Foster*, for appellants.—1. The legal title of the land was in appellants, and until they were divested of said legal title they had no cause of action against appellees for moneys spent in locating the certificate and procuring patent and payment of taxes. Campbell v. McFadden, 71 Texas, 30.

2. The fact that the certificate was a headright certificate for one league and one labor, was not sufficient to charge a purchaser of said certificate with the fact that it was issued to a man the head of a family. Sayles' Civ. Stats., art. 3872; Hart. Dig., arts. 1848, 1865; Pasch. Dig., art. 4150; Land Commissioner v. Bell, Dallam, 368.

3. Appellees are barred by laches and stale demand, and show no excuse for their laches. Rev. Stats., art. 3225; Parish v. Alston, 65 Texas, 198; Jackson v. Houston, 84 Texas, 626; Fuller v. Coddington, 74 Texas, 337; Montgomery v. Noyes, 73 Texas, 205; Howard v. Stubblefield, 79 Texas, 4; Abernathy v. Stone, 81 Texas, 434; Patty v. Middleton, 82 Texas, 588; Hensley v. Lewis, 82 Texas, 597.

4. Appellees should not be permitted to recover one-half of the land without reimbursing appellants for one-half of the amount paid by them for the certificate, one-half of the expenses of locating the certificate and procuring patent, and one-half of all taxes paid by appellants, together with legal interest on said several amounts to time of trial. Hunt v. Turner, 9 Texas, 389; Mills v. Alexander, 21 Texas, 164; Rodrigues v. Haynes, 76 Texas, 232; Ledyard v. Brown, 27 Texas, 404; Houston v. Killough, 80 Texas, 307; Hill v. Moore, 85 Texas, 335.

*Carter & Lewright* and *H. G. Connell*, for appellees.—1. The trial court correctly held, that if appellants were ever entitled to recover of appellees any sum of money whatever to reimburse them for the amount paid out by them for the certificate by virtue of which the land in controversy was located, together with interest thereon, the amount paid for locating said certificate, with interest thereon, the

amount of government dues and charges, together with all taxes on the land, as well as interest on said several sums of money, said right of recovery accrued more than four years prior to the filing of their said claim therefor in this suit, except as to the taxes for the years 1889, 1890, and 1891, and that accordingly all of said claims for moneys expended by appellants were barred by limitation on March 27, 1893, the date upon which appellants filed their first supplemental petition, in which, for the first time, they sought to recover as against appellees said several sums of money, together with interest thereon.

2. When Hensel and Kealy bought the B. F. Wood headright certificate, they took it with constructive notice that B. F. Wood had been a married man and the head of a family, and that said certificate was community property of B. F. Wood and Biba Ann Wood, his deceased wife; and that said certificate gave notice to Hensel and Kealy that some person other than B. F. Wood might have an interest in it, and that it could not have legally issued to him but for his relation to Biba Ann Wood. Said recital in said certificate put Hensel and Kealy on inquiry as to whether or not B. F. Wood was a married man when his right to the land accrued and when his certificate issued to him, and also put them on notice of every fact necessary to protect appellees against appellants' claim that they are innocent purchasers for value. Hill v. Moore, 85 Texas, 335.

3. The title to the land asserted by appellees is a legal title, as distinguished from an equitable title, and the defense of stale demand sought to be asserted by appellants is not applicable thereto. The doctrine of stale demand can not be invoked by appellants as against the rights asserted by appellees, for the reason that at the time of the institution of this suit appellees were in peaceable possession of the land in controversy. The doctrine of stale demand can be invoked only as an equitable defense by a defendant as against one who comes into equity seeking equitable relief. Othwin v. Thomas, 21 N. E. Rep., 430; Reardon v. Searcy, 3 A. K. Marsh. (Ky.), 539; Patrick v. Isenhart, 20 Fed. Rep., 339; Harmon v. Dyer, 3 McArthur's Rep. (D. C.), 292; Ruckman v. Cory, 129 U. S., 387; Wilson v. Byers, 77 Ill., 76; Newell v. Montgomery, 21 N. E. Rep., 508; Barber v. Whittock, 4 B. Mon. (Ky.), 180; Mays' Heirs v. Fenton, 7 J. J. Marsh. (Ky.), 306; Mechri v. Elloir, 54 Mich., 518; Cox v. Bray, 28 Texas, 260; Goode v. Lowery, 70 Texas, 156; Shinn v. Hicks, 68 Texas, 277; 12 Am. and Eng. Encyc. of Law, 606; Gibbons v. Bell, 45 Texas, 423.

4. Appellants are not entitled to recover of appellees any sum of money whatever by way of reimbursement for any amount paid by them for certificate, locating, surveying, patent fee, government dues, and taxes. Said payments were voluntarily made by appellants, and no legal liability rests upon appellees by reason thereof, even though appellees have been benefitted by such voluntary payments. Brown v. Elmendorf, 87 Texas, 56; Stone v. Ellis, 69 Texas, 325; Good v. Jas-

per, 71 Texas, 48; Goode v. Lowrey, 70 Texas, 156; Hirshfield v. Bank, 83 Texas, 455.

STEPHENS, Associate Justice.—In the year 1886, appellants, defendants below, took possession of the league and labor of land in controversy, situated in Haskell County.

November 10, 1887, appellees filed their suit in trespass to try title, to eject them. Failing to recover the entire tract, they appealed to the Supreme Court, and obtained a reversal of the judgment against them. 79 Texas, 347.

Upon a second trial, before the court without a jury, their recovery was again limited to an undivided half interest; hence this appeal.

The conclusions of fact upon which the last judgment was entered, and which we approve, are as follows:

"1. The patent to the land in controversy issued to Thomas Kealy and H. L. Hensel, as assignees of B. F. Wood, on January 2, 1858, by virtue of headright certificate issued to B. F. Wood, on February 1, 1838, and the certificate was transferred to Thomas Kealy and H. L. Hensel by Benj. F. Wood, on the 7th day of April, 1855.

"2. S. M. Vanfleet, S. A. Kealy, and T. H. Kealy are the only heirs of Thomas Kealy, who moved from Texas, in 1872 or 1873, to the State of Maryland, and died in said State of Maryland in 1879.

"3. Headright certificate number 4, being the same certificate above mentioned, was issued to Benj. F. Wood by the Board of Land Commissioners of Nacogdoches County, Texas, on February 1, 1838, covering one league and labor of land.

"4. Biba Ann Wood, who died in April, 1849, in Alabama, was, at the date of the Declaration of Independence, March 2, 1836, and at the date of the issuance of said certificate, the wife of Benj. F. Wood, and resided with him in Texas from 1834 to 1839.

"5. Defendants Sallie S. Towles, Louisa G. West, A. E. Walker, Willie Pollard, Jose Lance, J. C. Alexander, T. J. Alexander, J. A. Alexander, B. F. Alexander, and G. J. Alexander, are the only legal heirs now living of Biba Ann Wood, deceased.

"6. H. L. Hensel, plaintiff, and one of the assignees of Benj. F. Wood of said certificate, had no actual notice that Benj. F. Wood was ever a married man, and that his wife, Biba Ann Wood, had died prior to the transfer of said certificate. There is no evidence to show whether Thomas Kealy, the other assignee of Wood, had any such notice or not.

"7. There were no facts which authorized the sale and transfer by Benj. F. Wood of his entire headright certificate.

"8. Plaintiffs and those under whom they claim paid all the taxes on the land in suit from 1859 to 1891, both years inclusive. They also paid all other expenses of locating the land and obtaining title thereto.

"9. It was unsafe to settle in Haskell County prior to 1879, because of the attacks and incursions of hostile Indians.

"10. That H. L. Hensel and Thomas Kealy paid $1000 cash for the certificate in 1855."

*Conclusions of Law.*—1. The court having found upon sufficient evidence that the facts warranting the disposition by the survivor in community of the common property did not exist when Benj. F. Wood transferred the certificate in question, appellants acquired by that transfer only his half interest therein.

2. In purchasing this headright certificate, appellants and those under whom they claim took it with constructive notice of the rights of appellees. Hill v. Moore, 85 Texas, 335.

3. In avoidance of the equitable title thus derived by appellees as heirs of Biba Ann Wood, deceased, to a moiety of the land, appellants set up and urged the doctrine of stale demand, but we are of opinion that this title was available to them as defendants in the action to protect their possession. True, they set up this title in a cross-action, and prayed a recovery thereon, but this did not prevent them from relying upon it under their plea of not guilty.

Equitable defenses are divided into two classes, the one including those equitable rights which confer affirmative relief, the other those which are purely defensive, and which simply operate to bar the plaintiff's action. 3 Pom. Eq., secs. 1367–1374.

So long as the defendant can assert an equitable title without invoking any affimative relief, we are of opinion that the doctrine of stale demand does not properly apply. It is a doctrine designed to promote diligence on the part of suitors, and to discourage laches, by making it a bar to a recovery. 1 Pom. Eq., secs. 418, 419.

As said by the Supreme Court of the United States in Sullivan v. Railway, 94 United States, 806: "Nothing can call forth this court [court of equity] into activity but conscience, good faith, and *diligence.* When these are wanting, the court is passive and does nothing."

This distinction seems also to have found expression in the opinions of our Supreme Court. In Cox v. Bray, 28 Texas, 260, in holding that there was error in excluding, on the ground that it was stale, proof of an equitable title interposed as a defense against plaintiffs, claiming as the heirs of the patentee, Chief Justice Moore says: "The second objection to this testimony might be urged with much propriety, if the party by whom it is presented was the actor in the case; in other words, if it were relied on as a sword for attack, instead of a shield for defense." And further: "That a party has chosen to risk the security of his title upon evidence of a transitory and perishable nature, for a longer or shorter period of time, does not deprive him of the right, when attacked, of availing himself of it, if still within his power."

Under the old English system, where law and equity were administered by separate tribunals, the defendant in an action at law to recover land was forced to become a complainant in a court of equity and seek an injunction of the ejectment suit, in order to avail himself of his

equitable title as a defense.    This resulted solely from a want of power in the court trying the ejectment suit to entertain equitable defenses. Under the modern blended system, the law has supplied this jurisdiction, and the defense may now be fully interposed in the original action, without imposing upon the defendant the burden of becoming an actor, except in those cases where some affirmative equitable relief is essential to such defense.

In further support of this conclusion, see Shinn v. Hicks, 68 Texas, 277; Goode v. Lowery, 70 Texas, 156.    It is not believed that there is anything in the concluding part of the opinion of the Supreme Court in this case, or in the cases there cited of Bullock v. Smith, 72 Texas, 549, and Walet v. Haskins, 68 Texas, 418, necessarily in conflict with said conclusion.

4.    We are of opinion, however, that the court erred in rejecting, as barred by the statute of limitations, the claim set up by appellants in their supplemental petition, filed March 27, 1893, for reimbursement of one-half the amounts, with interest thereon, expended by them in having the certificate located, in procuring patent, and in paying the taxes on the entire survey.    We think these items, but not the item of $1000 expended in purchasing the certificate, were a charge upon the land in the nature of a lien.    Hill v. Moore, 85 Texas, 348, last paragraph of the opinion; Robinson v. Moore, 1 Texas Civ. App., 93.

It is not the case of money expended voluntarily by a stranger to the title, but by tenants in common.    Mr. Freeman says, in his work on Cotenants, section 512, that "a tenant in common who has removed an incumbrance from the common property is entitled to contribution from his cotenants.    To secure such contribution, a court of equity, acting in a suit for partition in favor of the cotenant removing the incumbrance, will enforce an equitable lien of the same character with that which he has removed;" and in section 176, while recognizing that a tenant is not *personally* liable to reimburse his cotenant for his proportion of the amount necessarily expended in effecting a redemption of the common property from taxes, he says: "The amount thus expended may no doubt be asserted as a lien against the joint property. But beyond this, the cotenant has no means of enforcing contribution, because the other cotenants had the right to abandon their interest in the land, and forfeit all claim to it, by nonpayment of the tax liens against it."

It follows, we think, from these principles, that appellants had a lien of the nature stated by Mr. Freeman, to the extent at least of their claim for money expended in the payment of taxes.    Their right to contribution for the expense of locating certificate and procuring title to the land would seem to be of the nature of the vendor's right to a lien for unpaid purchase money.    These items were the means, in part, by which the appellants acquired the legal title, which, to the extent of one-half the land, they held in trust for appellees.    The certificate, with the expense of having it located and patented, constituted sub-

stantially the original purchase price of the land. To the extent of a one-half interest in that certificate, appellees contributed towards the payment of this purchase price. Appellants paid the rest, and held the legal title, thus burdened, in trust. That legal title, by the judgment denying appellants a recovery thereon beyond one-half of the land, in effect passed to the appellees, but they did not take it free from the burden. The very just principle which implies a lien in favor of the vendor for unpaid purchase money is not limited to express or technical sales, but has a broad application. As illustrating the flexibility of this application to meet new cases as they arise, see Railway v. Henderson, 86 Texas, 307, and cases there cited.

But if the claim should be viewed as one imposing a merely personal obligation upon appellees, their taking and holding possession as cotenants, without an open repudiation of this claim for money expended in thus acquiring and preserving the title to the common property, would seem to imply a continuous promise to pay their proportion of the sums so expended for their mutual benefit. When so considered, the statute of limitations would not bar the right, under the facts of this case.

Our final conclusion is, that the judgment, in so far as it denied appellants a recovery of more than one-half the land, should be affirmed, but that in other respects it should be reversed and the cause remanded, with directions to the District Court to ascertain and fix the amounts expended, with lawful interest, as indicated above, giving appellees a reasonable time within which to pay one-half thereof, and in default of this, decreeing a sale of their half interest, as in case of the foreclosure of liens.

*Affirmed as to the land.*
*Reversed and remanded as to the lien.*