### J. B. CASSIDY, ADMINISTRATOR, ET AL. v. ANNA KLUGE ET AL.
#### No. 6179.

1. **Citation by Publication.**—Such service is perfected as notice so as to affect a purchaser *pendente lite* upon the publication for the time and in the manner prescribed in the statute. The continuance until the second term prescribed in the statute, in which time the defendant could answer, did not affect the existence of the completed service.

2. **Pendente Lite Purchaser.**—A purchaser of land from a non-resident defendant in a suit to recover the land and after the publication of the citation for four successive weeks had been made as prescribed for such service, and after the sheriff had made due return of the citation, is affected with notice of the suit and takes subject to the result.

**3.   Second Suit in Trespass to Try Title.**—A remote vendee under a purchaser charged with notice of the pendency of the suit intervenes in the suit setting up title as against both the plaintiff and the original defendant.   *Held,* that as such intervenor only had such title as the original defendant had, that a recovery by the intervenor was subject to the right of plaintiff to bring the second action for the land.

**4.   Administrator.**—Suit in trespass to try title was brought in 1886 by the widow and sole heir of deceased, who died in 1858.   With her was joined as plaintiff the administrator *de bonis non.*   It not appearing that the property sued for had been turned over to the widow in the administration proceedings it was held error to sustain exceptions to the petition so far as it alleged the administrator as a party plaintiff.

APPEAL from Travis.    Tried below before Hon. A. S. Walker.

The litigation of which this suit is a continuation was commenced by Stephen J. Cassidy, as administrator of Thomas Cassidy, deceased, against John King, a citizen of the State of Arkansas, by the filing of a petition in the character of a bill in equity in the District Court of Travis County, Texas, on the 25th day of October, 1858.   The purpose of said suit, as will appear from an examination of said petition or bill, was to require an accounting by King with the administrator of Cassidy in respect to certain transactions between the intestate and King involving property situated in Fort Smith, Arkansas, and the indebtedness of Cassidy to King and other persons in Arkansas as well as in Texas.

The prayer of the petition was that King be compelled to account to him for the just and true value of said property in Fort Smith, after deducting encumbrances thereon, also to account for the rents and profits thereon, and to account for the rents and profits of the property in the city of Austin which King had acquired title to, and for judgment for the excess of the rents and profits over the encumbrances and expenses, and that King be "directed" to "reconvey" to the "orator" for the use and benefit of said estate the said property in Austin.

Stephen Cassidy having died and James R. Pace having been appointed administrator *de bonis non* of the estate of Thomas Cassidy on the 5th day of December, 1860, filed an amended petition and replication to King's answer, in which the issue as to the state of account between Thomas Cassidy and John King growing out of Cassidy's indebtedness to King, and the acquisition by King of title to the property in Arkansas and his undertaking to convey the property in Austin, part of which is the subject of this suit, by his agreement of date December 1, 1856, is preserved.

Sarah Cassidy, the plaintiff below, became a party to the original suit March 5, 1868.

The second finding of fact by the court is that by amendment March 2, 1869, the south half and fraction of the north half of lot 5 in block 70 "was put in issue."

On June 9, 1871, the cause was tried for the first time in the District Court and resulted in a judgment for plaintiff; was appealed to the Su-

preme Court and the judgment of the court below was reversed and remanded.   36 Texas, 531, *et seq.*

The case went back to the District Court, and at the June term, 1874, was retried in conformity with the judgment and opinion of the Supreme Court, and the verdict of the jury found the settlement claimed by King to have been made between himself and Cassidy to be valid, which disposed of the Fort Smith property; also found for the defendant Smith, administrator of King, the sum of $3136.68.

Judgment was entered for King's administrator for this amount, and the north half of lot 4 in block 70, city of Austin, was ordered to be sold and the proceeds applied, first, to the payment of costs; second, to George Hancock, who had intervened; and third, the surplus to Mrs. Sarah J. Cassidy.

An appeal was prosecuted by James B. Cassidy, administrator, and Mrs. Cassidy, and the cause was transferred by the Supreme Court by consent of parties to the Commissioners of Appeals, and by them decided and reversed and remanded.

On July 2, 1883, Mrs. Anna Kluge, administratrix with the will annexed of F. W. Kluge, deceased, became a party as intervenor, claiming the south half and fraction of the north half of lot 5 in block 70 as the property of her testator, claiming the same under a mortgage made by King on January 31, 1859, to S. M. Swenson, foreclosure of said mortgage by Swenson, purchase by Swenson under order of sale, and the intervening conveyances down to testator.

Lewis Hancock, as executor and sole legatee of George Hancock, deceased, on July 2, 1883, made himself a party as intervenor, and the cause was tried by the court without the intervention of a jury on July 24, 1883, and the court following the decision of Commissioners of Appeals in its findings rendered judgment for the plaintiffs, from which the defendant Smith and the intervenors Hancock and Kluge appealed to the Supreme Court.

On that appeal this court reversed and rendered judgment in favor of Mrs. Cassidy for the north half of lot No. 4 in block No. 70 against Hancock, and in favor of Mrs. Anna Kluge for the south half of lot No. 5 in block No. 70 in the city of Austin, on June 24, 1885, against James B. Cassidy, administrator, and Sarah J. Cassidy; the plaintiff in the court below.

Motion for rehearing was filed and overruled December, 1885, as stated by appellants in cause No. 5124 in this court.

February 24, 1886, within twelve months after the determination of the first suit, the present suit was filed by James B. Cassidy, administrator *de bonis non,* and by Sarah J. Cassidy, widow and sole heir of Thomas Cassidy.

The case was tried December, 1886, by the court. Findings of fact and of law were filed.

Judgment was rendered for the defendant, the court holding that her intervention was sufficiently in the nature of a suit as to put the Cassidys in the attitude of defendants as to her, and that therefore they did not have the right to bring a second action for the land.

The plaintiffs appealed. The opinion sufficiently shows the matters discussed.

*Walton, Hill & Walton* and *Terrell, Walker & Gregory*, for appellants. 1. If under the law in force when the original suit (No. 1693) was converted into an action of trespass to try title plaintiffs therein were entitled to a second action, that right still exists, for it was not affected by the Revised Statutes. Allen v. Stephanes, 18 Texas, 669; Dangerfield v. Paschal, 20 Texas, 541; Lewis v. San Antonio, 26 Texas, 319; Bird v. Montgomery, 34 Texas, 715; Magee v. Chadoin, 44 Texas, 488; Blessing v. Edmondson, 49 Texas, 336; H. & T. Ry. Co. v. Magee, Id., 481; Sanchez v. Ramirez, 58 Texas, 310; Pasch. Dig., sec. 5298; Rev. Stats., final title, secs. 4, 5; Hall v. Wooters, 54 Texas, 231; Rev. Stats., arts. 1188, 1048.

2. The court erred in not finding as a conclusion of law that the suit of Thomas Cassidy, administrator, against John King, No. 1693, in District Court of Travis County, was a *lis pendens* against said King at and before the taking of the mortgage on the property in controversy by S. M. Swenson, and those claiming under him, including defendant, were and are affected with notice of said suit and the rights of Thos. Cassidy's estate and heirs in said property. R. A. Smith v. J. B. Cassidy et al, Austin Term, 1886, and authorities there cited; Grant v. Bennett, 96 Ill., 513; Bennett on Lis Pendens, sec. 74 and authorities cited.

*N. G. Shelley*, for appellee.— 1. The appellant is not entitled to this second suit, the former suit not being an action in trespass to try title, or an action involving the title to land in such sense or character as under the statute authorizing the second suit by plaintiff in actions of trespass to try title, or under the decisions of this court construing said statute, as to entitle appellant to maintain this suit. Pasch. Dig., art. 5298; Rev. Stats., art. 4811; Allen v. Stephanes, 18 Texas, 658; Dangerfield v. Paschal, 20 Texas, 536 and 552; Edgar v. The Galveston City Co., 21 Texas, 303; Ib., 46 Texas, 427; Spence v. McGowan, 53 Texas, 30; Edrington v. Newland, 57 Texas, 627; San Patricio v. Matthis, 58 Texas, 242; Atchison v. Owen, 58 Texas, 610.

2. *Lis pendens.* (1) To give the court jurisdiction of the person of John King, he being a non-resident of the State, "it must appear of record" that all the requirements of the statute authorizing citation by

publication had been complied with and that service of citation was complete.

(2) No presumption will be indulged to support such jurisdiction.

(3) Parol testimony will not be heard to establish such jurisdiction or to supply evidence of service by the publication of citation as required by the statute necessary to give the court jurisdiction of the person of the defendant.

(4) If publication of citation to King with brief statement was made it should have been reproduced and substituted and made a part of the record, so that it might be considered and determined whether the service and return were in compliance with the statute and give the court jurisdiction of the person of King. This has not been done, and the ninth finding of fact by the court is insufficient and can not supply it.

(5) Upon what such finding is based does not appear from the record, and therefore will not be held to support *lis pendens* after the lapse of twenty-eight years as to the property conveyed to Swenson by King on the 31st of January, 1859.

(6) Service by publication such as found by the court was not complete until the succeeding term of the court, held in June, 1859, and until then the court did not have jurisdiction of King. Until the court had such jurisdiction there could not be *lis pendens*.

(7) This court will judicially know that the term of court succeeding that which commenced on the first Monday in December, 1858, commenced on the first Monday in June, 1859. Pasch. Dig., arts. 25, 1508, p. 373; Blossman v. Letchford et al., 17 Texas, 647; Wilson v. Palmer, 18 Texas, 596; Edrington v. Allsbrook, 21 Texas, 189; Allen v. Wyser, 29 Texas, 150; Lyon v. Paschal, 45 Texas, 435; Hewitt v. Thomas, 46 Texas, 232; Moore v. Rice, 51 Texas, 289; Stegall v. Huff, 54 Texas, 196; Sugd. on Ven., 7 Am. ed., pp. 544–7; Freem. on Judg., sec. 127; Pennoyer v. Neff, 95 U. S., 714.

3. If there were *lis pendens* at any time affecting the property herein in controversy it was removed and the property relieved by the amended petition filed December 5, 1860, and Swenson's vendees, down to and including appellee's testator, were not affected by it.

4. The principle of *lis pendens* is that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril. Lewis v. Mew, 1 Stobh. Eq., 180; Wade on Notice, sec. 369, p. 158; Board v. T. & P. Ry. Co., 46 Texas, 323; Rippetoe v. Dwyer, 65 Texas, 707.

COLLARD, JUDGE.—The original suit was filed in the District Court of Travis County October 15, 1858, against John King, a resident of Arkansas. Citation by publication was issued, which was published in the *State Gazette*, a weekly newspaper published in Travis County, for the

time required by law. It was returned by the sheriff prior to the first Monday in December, 1858, which was the first day of the fall term of the District Court. Subsequent to this, but before the next term of the court, King having the apparent title to the part of lot 5 in controversy executed to S. M. Swenson a mortgage upon the same to secure an amount of $1200. This mortgage was afterward foreclosed, the property sold, and bought in by Swenson. Mrs. Kluge deraigns her title from Swenson. She intervened in the original suit in 1883, setting up her title through the Swenson mortgage.

On the 23d of June, 1885, the Supreme Court, affirming the judgment of the court below, rendered final judgment for the part of lot 5 in favor of Mrs. Kluge, the court holding that Swenson had no notice of the rights of the Cassidy estate to the premises by virtue of the "memorandum" executed by King to Thomas Cassidy in 1856, because the instrument was not recorded until after Swenson took the mortgage, and that *lis pendens* did not apply because the record before the court did not show that there had been any service of citation upon King by publication or otherwise at the date of the mortgage. The record before the court did not show the facts of service by publication that are now before us, the parties assuming that the filing of the petition was the beginning of the suit and that *lis pendens* would apply from that time, but the court decided that the doctrine of *lis pendens* would not apply until after service of citation.

The present suit was then brought as a second suit of trespass to try title, within one year after the final judgment was rendered in the Supreme Court.

The trial judge, upon Mrs. Kluge's plea of *res adjudicata*, decided that the judgment of the Supreme Court was final and conclusive, and that plaintiff was precluded from a second suit. This ruling was appealed from, and is the prominent point in the case. At the time the original suit was brought the plaintiff under statute was allowed a second suit of trespass to try title, after losing the first. The Revised Statutes took away this right to second suit (Rev. Stats., art. 4811), but it did not prejudice the rights of parties plaintiff in suits then pending to their second suit. Mrs. Kluge intervened in the original suit of Cassidy v. King in 1883, the Revised Statutes being in force. It can not be denied that she came in asserting title that was in the original defendant, King, at the time of the return of the sheriff showing complete service of the citation by publication upon him. She claims from King by virtue of his mortgage to Swenson, and if *lis pendens* is applicable she can be in no better attitude than King if he were alive and defending; she would be entitled to the same defenses he would be and none other; she took his place in the suit as defendant so far as the title to part of lot in controversy is concerned, subject to all the equities of the Cassidy estate

against it in the hands of King.   We have no doubt of the proposition that suit was pending at the date of the mortgage by King to Swenson affecting all the parties with notice of Cassidy's claim upon the premises. The citation had been published for the time required by law and the officer had made his return.   The defendant, King, was allowed by law until the next term of the court in which to answer, but he was none the less served at the date of the mortgage as fully as he ever would be. Pasch. Dig., art. 1508.

From this it must follow that the judgment of the Supreme Court in favor of Mrs. Kluge in the original suit was not final, but that this second suit could be maintained against her for the title to the premises, her title being subject to the right of Mrs. Cassidy, who owns and represents all rights of Thomas Cassidy, deceased, under the "memorandum" of King to him, and subject to such settlement as Cassidy was entitled to with King by virtue of the terms of the "memorandum," which recognizes Cassidy's equitable title to the land therein described, charged with certain debts due by Cassidy to King.   When the case was before the Supreme Court it did not appear that there had been any service of any character upon King at the date of his mortgage to Swenson, and the fact was so adjudged by the court.   This judgment in the former suit, deciding as it did a fact which if true would deprive plaintiff of the right to a second suit, can not be set up as *res adjudicata* any more than any other fact determined by the judgment.   The fact upon which the right to a second suit depends may be shown in the second suit, though adjudged in the former suit not to exist.

. We do not think the court below erred in dismissing King's administrator from the case.   King had in his lifetime disposed of all the interest he had ever had in the premises.   Mrs. Kluge holds the rights he had under the "memorandum," and can make the same defenses he could make if he had not disposed of his claim and none other, and no judgment could be taken against King's estate for any balance that may be due, if any, to Cassidy's estate.   To hold King's administrator as a party defendant could serve no useful purpose.   We do not think it was improper to dismiss him.

The suit was brought February 23, 1886, by James B. Cassidy as administrator *de bonis non* of the estate of Thomas Cassidy, deceased, and Sarah J. Cassidy.   It is alleged that Thomas Cassidy died in August, 1858, intestate, leaving petitioner Sarah J. Cassidy, his surviving wife, and one child which died in infancy, leaving its mother Sarah J. sole heir, thus showing that she is the only real party plaintiff having any interest in the subject matter of the suit.   Upon exception of defendant the court dismissed the administrator from the suit as an unnecessary party, it being apparent that the estate had no interest in the property sued for.

We are not advised for what purposes the administration of the Cassidy estate has been kept alive. It may have been for purposes of this suit. It does not appear that the administration has ever been closed and that the property in dispute has been ordered to be delivered to Mrs. Cassidy. Without deciding whether the administrator was or not a necessary party we think he was a proper party plaintiff with Mrs. Cassidy.

We are of opinion that plaintiffs have the right to a second suit and that the cause should be reversed and remanded for trial.

*Reversed and remanded.*

Adopted March 12, 1889.

The following opinion in the case of Smith v. Cassidy, referred to in the foregoing opinion, has been omitted from the volume in which it should have appeared and is now inserted:

WILLIE, CHIEF JUSTICE.—It is insisted by the appellants that the decision made in 1872 upon the first appeal taken in this cause is conclusive of the rights of the parties upon all the material questions arising on the present appeal. The only question before the Supreme Court upon the first appeal was as to the correctness of the ruling of the District Court sustaining a demurrer to the defendant's answer. Upon revising this ruling the court had no authority to treat the allegations of the answer as true, and direct the judgment below to be entered accordingly. It could only remand the cause for a new trial in accordance with the principles of the decision, and its mandate must be so construed. Upon a new trial below judgment went for the present appellants. Upon appeal from this judgment, the cause having been submitted to the Commissioners of Appeals for their award the point was distinctly taken that the previous decision of the court was decisive of all the questions brought in review and passed upon by that decision. The Commissioners failed to sustain this point, held that they could reopen these questions, and proceeded to announce the law to be directly the reverse of what the Supreme Court had previously held. They thereupon awarded that the judgment be reversed and the cause remanded for a new trial. Upon the next trial the court below proceeding in accordance with the views of the Commissioners rendered judgment for the administrator and widow of Thomas Cassidy. Upon appeal from that judgment it is insisted that we must overrule the decision of the Commissioners because they erred in disregarding the previous decision of the Supreme Court, and that we must adhere to the original decision without regard to its correctness, and must not examine into the reasons upon which it is founded.

The statute creating the Commission makes their award the law of the particular case submitted to them, but provides that it shall not be au-

thority in any other case. It has the same binding force in the particular case that our opinions have in cases determined by us.

Their decision in this suit had the effect of determining that so far as the present case is concerned the law is that the first decision of this court may be disregarded and the principles of that decision may be overruled.

What our ruling would be in another case, or if the question were an open one upon this appeal, it is unnecessary to intimate. We simply hold in accordance with the views of the Commissioners that in this case the decision made in 1872 is not binding upon this court, and that we may proceed with its adjudication in the same manner as if no such decision had ever been made.

We concur with the Commissioners in construing the "memorandum" signed by King to be a security for the debts mentioned in the instrument. It is true that at the time it was made King held the legal title to the Austin lots described in the "memorandum." But Cassidy had owned or claimed them; had encumbered them with liens; had allowed them to be sold at execution sales; and to one of them there was a claimant who disputed Cassidy's original acquisition of that particular lot. King and his partner Duval held a large debt and Duval alone held a small one against Cassidy, which were not liens upon the Austin lots or upon any other property so far as appeared from the "memorandum." The evident intention of the instrument was to make the two debts of King and Duval a charge upon the property equally with the encumbrances already placed upon it by Cassidy.

The instrument itself bears testimony as to the facts and objects that gave it birth. The lots were valuable and probably sufficient to pay off the liens with which they were encumbered and King and Duval's debts also if the titles to the property claimed by others could be extinguished. Hence the opposing titles and lien claims were bought in by King, he paying for them in the manner pointed out by the recitals of the "memorandum." Having the full legal title in himself, and being the owner of all the encumbrances upon the lots, there certainly was no necessity for King to solemnly charge his own property with debts due to himself and to provide that when he sold the lots and paid himself these debts out of the proceeds that another party should be entitled to the balance unless that party had some interest in the property. It is not reasonable to suppose that he would also provide that another should have full title to the property if he paid off the encumbrances within a certain time unless such person had some claim to the property or there was a previous agreement that this provision should be inserted in the instrument. The only conclusion to be drawn from the face of the instrument itself, especially when taken in connection with the admitted facts of the case, is that King, wishing to create a lien upon the lots to secure the debts of himself and

Duval, placed the title to the land as well as to the encumbrances upon it in himself with the understanding that when all these debts should be paid Cassidy was to have the property back or such of its proceeds as should remain after all the debts and encumbrances upon it were satisfied. This is borne out by his own answer, which herein need not necessarily be resorted to for proof upon this subject. Call this a mortgage, a deed of trust, or an assignment, or by whatever other name we choose, it was a clear declaration on the part of King that he had bought in the legal title for the purpose of accomplishing certain objects and the fulfillment and execution of certain trusts. He agreed to hold the property in trust for the following purposes:

1. To allow Cassidy two years within which to redeem it by paying off all encumbrances.

2. In default of such redemption to sell it himself and pay off previous encumbrances as well as his and Duval's previously unsecured claims.

3. To allow Cassidy the privilege of selling the property within two years, the proceeds to be applied to the payment of said claims.

4. After paying all said claims and the expenses of the trust to pay to Cassidy the balance of the proceeds of the property.

In this instrument are found all the elements of a security for the payment of pre-existing debts. These debts are recited; the property once Cassidy's is not to be his again in absolute title till these debts are paid. If necessary to sell the property to pay these debts Cassidy is to have the balance remaining after their payment; he virtually has the equity of redemption in the premises; if he does not redeem by paying within the two years King does not get the property, but must still sell it, and in a certain contingency Cassidy is to share in the proceeds. It is not therefore a conditional sale. It is in effect an agreement by King for the consideration of having his and Duval's debts charged upon the property to hold it in trust, first for the payment of the enumerated debts, and second, for the benefit of Cassidy himself. It is true that Cassidy had been divested of all his title to the lots before King bought. But King obtained the title for the purpose of securing himself, and after he was satisfied of allowing his purchase to inure to the benefit of Cassidy. He invested Cassidy with an equity to take effect immediately upon the satisfaction of his own claims.

The transaction was in effect the same as if the parties had resorted to the more circuitous method of having the lots conveyed to Cassidy by those holding title thereto and the encumbrances transferred to King, then having a conveyance of the lots made by Cassidy to King, and an agreement made by King to Cassidy to hold in trust, as in the present instrument. Equity looks at the substance not the face of such instruments; and as in the one case the form of the transaction would place the equitable title in Cassidy and create a trust in the lots to pay the sev-

eral debts enumerated, so in the other the substance of the transaction
and the real intention of the parties would bring about the same effect.
Ruffier v. Womack, 30 Texas, 332; Alstin v. Cundiff, 52 Texas, 453;
Loving v. Milliken, 59 Texas, 423; Perry on Trusts, secs. 82, 95, 96–111;
Jones on Mort., sec. 16; Fisher on Mort., 2.

The commissioners having remanded the cause for a new trial the ques-
tion before the District Court was: What are the rights of the various
parties if the instrument is treated as a mere security for the payment of
debts?

We can not see that King's administrator had any title in the property
left worth contending for.    He had sold to Hancock his title to the north
half of lot 4, and Swenson had bought at foreclosure sale his title to the
south half of lot 5.    The questions demanding our decision on this appeal
are as to the validity of the titles acquired .through King by the inter-
venors, Hancock and Mrs. Kluge.

The "memorandum" made by King was not recorded till March 8,
1859.    At the time it was made, viz., December 1, 1856, the apparent
title to the property was in King.    All persons dealing with King in re-
ference to the property between these two dates must be protected
unless notice of Cassidy's interest was brought to them in some legal
manner.

Hancock bought in 1869, and of course can not upon his deed alone
claim to be a purchaser without notice.    The consideration paid by him
was wholly foreign to anything like a payment of the debts mentioned in
the original agreement.    His purchase too was made more than ten years
after this suit had been commenced and was at issue between the parties.
He took therefore subject to Cassidy's rights and to the final determina-
tion of the present cause.    It is clear therefore that Hancock's rights are
such only as attached to him by reason of the sale made by George Han-
cock to King in 1856 and the execution of the note by the latter to Han-
cock for the purchase money.    Hancock did not intervene till June, 1871,
after this note was barred by limitations, and the plaintiff expressly set
up the bar in answer to his intervention.    There was no reservation of lien
in the deed or note which were given at the time of the sale by Hancock
to King.    Hence the contract of sale was executed, the title passed to King,
and Hancock held a mere vendor's lien upon the land to secure the pay-
ment of the note.    In default of its payment the vendor could not reclaim
the land, but could only foreclose his lien by suit and have the premises
sold to satisfy it.    Ransom v. Brown, 68 Texas, 188; White v. Mann, 52
Texas, 416; McIlvain v. Allen, 58 Texas, 383.

His debt was subject to the bar of limitation in the same manner as
any other debt, and when that had become complete his lien and remedy
by foreclosure were gone, and the title having previously vested in his
vendee there was no reason why the lot should not be set aside in lieu of

a homestead, as in case of any property held by indefeasible title. The debt of Horan having been satisfied there was no other claim holding such lien upon the north half of lot 4 as would prevent it from being set aside to Mrs. Cassidy in lieu of a homestead. The court therefore did not err in decreeing in her favor a recovery of that portion of the property in controversy.

Mrs. Kluge claims under Swenson through deeds made subsequent to the record of the "memorandum." Her title must therefore stand or fall accordingly as Swenson's right to the land was acquired with or without notice of the "memorandum" of agreement between King and Cassidy. Swenson took his mortgage prior to the record of the "memorandum" but subsequent to the commencement of this suit. The first question for decision then is, was Swenson a mortgagee *pendente lite?* At the time he took the mortgage, so far as the record shows, nothing had been done in the case except to file the original petition. There is nothing to show that King had ever been served with process, and if the original answer was filed by King it was subsequent to the date of Swenson's mortgage. Unless therefore the *lis pendens* began with the filing of the petition Swenson was not affected by it.

In the case of Board v. T. & P. Ry. Co., 46 Texas, 327, it was said that "in some of the courts where *lis pendens* dates from the service of the subpœna and filing of the bill the suit or action is begun by issuing the subpœna or other process, and not as with us by the filing of the petition or bill setting forth the cause of action." It was intimated that for this reason a different rule might prevail with us, and the *lis pendens* be held to commence from the filing of the petition. In England as well as in the United States courts, and with perhaps one or two exceptions in all the State courts, suits in chancery are commenced by bill, which prays for the subpœna to be afterwards issued. Yet so far as we have been able to discover, without a single dissent, notice by *lis pendens* does not take effect till the subpœna is served. 1 Vern. Rep., 319; 2 Johns. Ch., 584; Murray v. Ballou, 1 Johns. Ch., 576; Bailey v. McGinness, 57 Mo., 362; see Wade on Notice, sec. 348, and authorities cited in note 2.

In some of the States suits are commenced as in our own by filing a petition, and in others by issuing a writ; but without regard to the act by which the suit is commenced for other purposes it seems to be universally held that for purposes of notice by *lis pendens* it does not begin till service of process or its publication in case of an absent defendant. Lyle v. Bradford, 7 B. Monr., 512; Bennett v. Williams, 5 Ohio, 461; Goodwin v. McGehee, 15 Ala., 241; Metcalf v. Smith, 50 Mo., 575. Against such an array of authorities we should not feel inclined to oppose our unsupported opinion under any circumstances, but we see no reason to doubt their correctness upon principle. We think, therefore, that

Swenson was unaffected by any notice of this suit at the time the mort-- gage was executed.

When Swenson brought suit to foreclose his mortgage the "memo-- randum" was on record. This did not affect his rights under the mortgage, but it is said he should have made Cassidy's administrator party to the suit. The only effect of his failure to do so was to leave in Cassidy's. estate all such right as it could have asserted had the administrator been made a party. Subject to this right Swenson transmitted his title to his. vendee and it finally reached the intervenor Kluge. Whatever this right in Cassidy's estate may have been his administrator could have asserted it against Mrs. `Kluge in the present case. Had Cassidy's administrator been made party to the mortgage suit all the defense he could have set up was his intestate's equity growing out of the agreement with King. This equity the administrator has pleaded in the present case and has. had all the advantage of it here that he could have obtained from it in. the mortgage suit. It could not have availed him there against Swenson, who took his mortgage without notice of this equity. It can not. avail him in this suit for the same reason.

We think judgment should have been rendered for Mrs. Kluge for the one-half lot claimed by her. In the view we have taken of the case the admission of the answer of King, if error, was unimportant. There was enough evidence in the case without it to sustain the finding of the court against Hancock's title, and the facts stated in the answer have not affected our ruling upon the title of Mrs. Kluge. We express no opinion upon the decision of the commissioners as to the necessity of presenting to Cassidy's administrator the claims stated in the "memorandum." We reserve our views upon that question till a case shall arise in which it shall be necessary for us to put them upon record.

It is ordered that the judgment of the court below so far as it decrees a recovery in favor of Mrs. S. B. Cassidy against King's administrator and Lewis Hancock be affirmed, and that in so far as it decrees a recovery in favor of the administrator of Thomas Cassidy against Mrs. Kluge it be reversed, and the court proceeding to render such judgment here as should have been rendered below, orders and decrees that the appellees. take nothing by their suit against the said Mrs. Kluge and that she be quieted in her title to one-half of lot No. 5, in block 70, city of Austin, and recover her costs in this behalf expended in this court and the court. below.

*Reversed and reformed.*

Delivered June 23, 1885.

Justice West did not sit in this case.