MEADOR BROS. et al. v. HINES.

(Court of Civil Appeals of Texas. Amarillo. March 14, 1914. Rehearing Denied April 11, 1914.)

1. VENDOR AND PURCHASER (§ 242*)—BONA FIDE PURCHASER—BURDEN OF PROOF.

One asserting an equity in land against the purchasers of the legal title has the burden of showing that such purchasers are not bona fide purchasers without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

2. VENDOR AND PURCHASER (§ 244*)—BONA FIDE PURCHASER—EVIDENCE—SUFFICIENCY.

In an action by one who asserted an equitable interest in land, the legal title to which defendants had acquired, evidence held insufficient to show that defendants were not bona fide purchasers without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

3. VENDOR AND PURCHASER (§ 229*)—BONA FIDE PURCHASER — NOTICE—WHAT CONSTITUTES.

A statement by one engaged in the land and abstract business to a purchaser of land that he thought the sale would not be good unless the vendor's wife joined was not a sufficient communication to apprize the purchaser of an equitable interest of the vendor's wife, for, if it was not the statement of an erroneous legal opinion, it was at most the utterance of a mere suspicion, and not a fact which would give the purchaser constructive notice of the wife's interest.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

4. VENDOR AND PURCHASER (§ 226*)—BONA FIDE PURCHASER—WHO IS.

Where purchasers of land paid the purchase price to a bank as the vendor's agent, and the deed to them was deposited with the bank before they had notice of plaintiff's equitable interest, the bank's retention of the funds and the deed until after the purchasers acquired notice of plaintiff's claim does not deprive them of the defense of bona fide purchase, for the transaction was completed upon the delivery of the purchase price and the deed to the bank.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 475, 476; Dec. Dig. § 226.*]

5. LIS PENDENS (§ 8*)—NOTICE—CITATION.

Until service of citation upon the defendant husband, the commencement of an action for divorce, in which the wife prayed for adjudication of their property rights, was not notice to purchasers of land from the husband of her interest therein.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 13–19, 25; Dec. Dig. § 8.*]

6. EVIDENCE (§ 317*)—HEARSAY.

Where there was no evidence that defendants, who purchased land in which plaintiff had an equitable interest, were parties to a scheme to defraud her, evidence of communications between the holder of the legal title and his agent, showing a fraudulent scheme, was inadmissible as against defendants.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

7. VENDOR AND PURCHASER (§ 243*)—BONA FIDE PURCHASER — EVIDENCE—ADMISSIBILITY.

After defendants had entered into a contract for the purchase of land, and had sent the purchase price to the bank with which the vendor was to deposit the conveyance, plaintiff, who had an equitable interest in the land, wired defendants to assist her in establishing her title, and that she would protect them. At the time of the telegram both parties had carried out their agreement, but the bank had not transmitted the deed to defendants or the purchase price to the vendor. Held, that in a suit by plaintiff against defendants, the telegram was inadmissible, not showing that defendants were not bona fide purchasers, and necessarily being prejudicial.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 606–608; Dec. Dig. § 243.*]

8. TAXATION (§ 832*)—PAYMENT OF TAXES—VOLUNTEER.

A person who, in good faith and under color of title, claims to be the owner of real estate may pay taxes assessed thereon; and, if his title is afterwards defeated, he is entitled to be reimbursed by the true owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1645; Dec. Dig. § 832.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Consolidated actions by Florence L. Hines against Meador Bros. and others. From a judgment for plaintiff, the named defendants appeal. Reversed and remanded.

See, also, 146 S. W. 289.

Davis & Davis, of Gainesville, R. E. Thomason, of El Paso, and Gustavus & Jackson, of Amarillo, for appellants. M. W. Stanton, of El Paso, Fiset, McClendon & Shelley, of Austin, and Lumpkin & Harrington, of Amarillo, for appellee.

HUFF, C. J. On the 3d day of May, 1902, appellee, Florence L. Hines, then Florence L. Taylor, brought an action of trespass to try title for the seven sections of land in question, against J. W. Taylor, her then husband, and John Sparks. Taylor and Sparks thereafter interpleaded the appellant Meador Bros., who in answer to the appellee's petition, alleged that they had purchased the land from J. W. Taylor and John Sparks, in good faith for value, and without notice that Florence L. Hines, the then wife of Taylor, had or claimed an equity in the land. Appellee, in addition to the ordinary allegations of trespass to try title, set out at great

length her equity in the land, and charged a fraudulent conspiracy on the part of Sparks and Taylor and others to defraud her of her rights. The case was brought on change of venue from Sherman county to Potter county, and tried at the March term thereof, 1913. The court submitted the case to the jury upon special issues, to which the jury returned answers in favor of the appellee, and judgment was rendered in accordance therewith, and from which appellants prosecute appeal.

This case has been before the Courts of Civil Appeals heretofore and the Supreme Court and is reported in 87 S. W. 740; 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; 146 S. W. 289. The issues in the case will be found in those reports, and set out more in detail.

The jury in answer to the issues submitted to them returned a verdict, finding as facts substantially the following: That on or about the 15th day of September 1900, Mrs. Hines, then Taylor, was to raise $5,000 by mortgage upon her separate property in Toledo, Ohio, and that the money should be used by Taylor as a payment on his contract with J. F. Crosby and wife for the purchase of 30 sections of land in Sherman county, Tex. The seven sections of land in controversy were included in the 30 sections above named. Taylor and his wife, the appellee herein, entered into an agreement at the time of raising the $5,000 on plaintiff's property in Toledo, Ohio, to the effect that such money should be used by Taylor in first repaying himself the $1,000 he had paid for the option on the Crosby land, and the balance to be used as payments on said purchase of the 30 sections of land, and the title should be so taken as to require the signature of appellee, Mrs. Hines, and that it be in her name. That $4,000 of the money obtained upon the mortgage was applied direct to the payment of the land, and $1,000 was paid Taylor to reimburse him for the sum paid by him on the option from Crosby, and that Taylor used no other money in purchasing the land. The jury also found that appellee was to own the land and J. W. Taylor was to have only an undivided half interest in the profits, if any, to be derived from the sale of the land, after paying off the $5,000 secured by the Toledo, Ohio, property belonging to Mrs. Taylor. We think there is evidence in the record which will support the findings of the jury, and we would not feel justified in disturbing the verdict on that ground.

The parties agreed to the following facts, which are set out in the judgment of the court:

"(1) It is agreed that the 30 sections of land described in plaintiff's fourth amended original petition, and which include the seven sections of land which are involved in this suit, were, on the 10th day of July, A. D., 1876, together with other lands, patented by the state of Texas to J. F. Crosby, as assignee of the Texas New Orleans Railway Company, and that the same remained the property of said J. F. Crosby, or the said J. F. Crosby and his wife, until conveyance was afterwards made by Crosby and wife, as hereinafter agreed upon.

"(2) That thereafter, on the 16th day of June, 1900, while the said J. F. Crosby and wife, Josephine Crosby, were still the owners of said 30 section of land, they entered into a written contract with the said defendant J. W. Taylor by which they agreed to sell and convey the lands for the sum of 50 cents per acre or $9,600 in the aggregate; said Taylor paying at that time in cash the sum of $1,000, the balance to be paid within 60 days thereafter, but the time was afterwards extended by mutual agreement. That the said Taylor fully paid the balance due for said 30 sections of land prior to November 20, 1900, with the exception of $500, which was agreed to be reserved to cover whatever taxes might be due on the land, and that on November 20, 1900, said Crosby and wife executed to the said Taylor a general warranty deed, conveying said 30 sections of land; the deed to be introduced in evidence.

"(3) That said agreement of June 16, 1900, provided that a failure to pay the balance due of the original purchase money in the time provided for in said agreement should forfeit the $1,000 paid at the execution of said contract to the said Crosby and wife; the exact provisions will be shown by the evidence.

"(4) That J. W. Taylor, defendant herein, and the plaintiff, were legally married on June 28, 1900.

"(5) That on September 15, 1900, said defendant Taylor and plaintiff executed a mortgage upon plaintiff's separate real estate situated in Toledo, Ohio, and also executed two notes secured by said mortgage, one for the sum of $1,500, and the other for the sum of $3,500, and realized the sum of $5,000 therefrom, and same was turned over to said J. W. Taylor."

The law controlling the issues as above set out was discussed by the Supreme Court when this case was before that tribunal. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381. We feel that it is unnecessary, and that we are unable, to add anything further to what was said by the Supreme Court in this case. We, therefore, overrule the various assignments of the appellant calling in question the findings of the jury as to the equity of Mrs. Hines and the judgment of the court thereon.

The next question presented is whether Meador Bros. are purchasers in good faith for value and without notice of appellee's equity, as found by the jury. The parties, with reference to this branch of the case, entered into the following agreement, which is incorporated in the judgment:

"(6) That the said J. W. Taylor was in the year 1898 upon his voluntary petition, adjudged a bankrupt by the United States district court at El Paso, filed his schedule of assets and liabilities in said proceeding in accordance with the bankrupt law and rules, and that in said schedule he scheduled no assets, but scheduled liabilities aggregating about $40,000, and that John Sparks did not appear in his schedules as one of his creditors. The defendant reserves the right to object to this as material and a part of it as hearsay."

"(9) On the 15th day of February, 1902, the said Taylor through his duly authorized agent, C. F. Rudolph, entered into a contract in writing with the defendants T. S. and S. D. Meador, by which he agreed to execute to the said Meador Bros. a deed, with the usual covenants of warranty conveying said sections of land in controversy, for the price of $1.50 per acre, less 29 acres deducted on account of the right of way to said Rock Island Railroad over two of said sections, $100 of said purchase money being paid in cash by Meador Bros. to said Rudolph upon execution of said contract; and by said contract said Taylor was to furnish an abstract showing a good and perfect title, free from defects, to be approved by the attorneys selected by Meador Bros., and, upon said abstract being furnished and approved by said Meador Bros. bound themselves to send to the Lowden National Bank at El Paso, Tex., the sum of $5,659.27, in exchange, to be paid to said Taylor upon his depositing in said bank a warranty deed to said Meador Bros., in compliance with said contract, said sum being the amount of unpaid purchase money going to said Taylor; the remainder of said purchase money, less the sum of $49.14 taxes upon said land, assumed by the said Meador Bros. and less $22, expense of surveying, and the sum of $968.09, according to said agreement, to be paid direct to the said Rudolph, as commissions due him from said Taylor upon said sale. The terms of the instrument to be corrected by reference to the instrument itself."

"(11) That on February 22, 1902, said Rudolph, having completed the abstract of title to said seven sections sent to Meador Bros., at St. Jo, Tex., together with a prepared deed to said Meador Bros. to be signed by said Taylor for the approval of said Meador Bros. and their attorneys, and with said deed and abstract inclosed the following letter: 'Stratford, Texas, February 25th, 1902. Lowden National Bank, El Paso, Texas— Gentlemen: Inclosed is a warranty deed to be executed by J. W. Taylor, conveying seven sections of land in Sherman county, to T. S. and S. D. Meador. Also inclosed is a bank draft, $5,659.27, in your favor which you are to transfer to the account or order of the said J. W. Taylor on his execution of said deed. The deed you will then transmit at once either to Meador Brothers, St. Jo, Texas, or to me at Stratford, Texas, for record, as the Meador Brothers may indicate below on this page as being their wish. The deed is purposely drawn by previous agreement of all parties to make the consideration read one dollar and fifty cents per acre. Very respectfully, C. F. Rudolph, Agent for J. W. Taylor.' This letter was in the handwriting of said Rudolph. Meador Bros. had the abstract of title examined by an attorney of their selection, who approved the same, and on or shortly before the 10th day of March, 1902, procured exchange from a bank at St. Jo, Tex., upon the Seaboard National Bank of New York, payable to the order of Lowden National Bank, for $5,659.28, and placed said draft, the above letter, and deed in an envelope, and mailed it to said Lowden National Bank, but before doing so wrote the following at the bottom of said letter: 'Send Deed to Meador Brothers, St. Jo, Texas. Meador Brothers.' Said letter, draft and deed reached the Lowden National Bank on or shortly before the 13th day of March, 1902, whereupon the said bank forwarded the draft to New York for collection and had its proceeds placed to its credit in the Seaboard National Bank, and Meador Bros. never at any time appeared upon the books of said Lowden National Bank.

"(12) Said J. W. Taylor, at Stratford, Tex., for the purported consideration of $6,008.85, executed a deed conveying said seven sections of land to John Sparks, which deed purported to be dated, acknowledged, and recorded in Sherman county, on the 1st day of March, 1902, which deed will be introduced in evidence.

"(13) On the 18th day of April, 1902, said Sparks, at the request of said Taylor, executed and acknowledged, for a recited cash consideration of $6,008.85, a deed, conveying said seven sections of land to said T. S. and S. D. Meador, and on the 19th day of April, 1902, mailed said deed, together with the deed from Taylor to himself, to said Lowden National Bank, and with said deed inclosed a letter, directing the bank to deliver to Meador Bros., when the amount named as consideration of the deed, $6,008.85, was placed to his credit in said bank. The deeds and letter reached the Lowden National Bank on or shortly before April 26, 1902; these deeds as well as the deed from Crosby and wife to Taylor were in the usual form, and contained usual covenants of warranty.

"(14) On May 9, 1902, said Sparks wired said bank to send him by mail New York Exchange for $6,000, in response to which instructions the bank, on the 10th day of May, 1902, mailed him New York Exchange for $5,651.57, the amount, less exchange, previously deposited, to be paid to J. W. Taylor on the sale to Meador Bros.

"(15) On March 1, 1902, the plaintiff filed in the district court of El Paso county a suit for divorce against her husband, J. W. Tay-

lor, and for an adjudication of their property rights, including the rights claimed by them in and to the land in controversy. That citation was issued in said cause in El Paso county, where the defendant Taylor then resided, on March 1, 1902, and said citation was served on said J. W. Taylor on March 4, 1902, in El Paso county, Tex. That an injunction was granted and issued in said cause on March 1, 1902, restraining said Taylor from handling and disposing of the land mentioned in the deed from Crosby and wife to J. W. Taylor, including the seven sections of land involved in this suit; or the proceeds of such lands, and said injunction was served on said J. W. Taylor in El Paso county at 10 o'clock a. m. on March 4, 1902. That said divorce suit was dismissed by plaintiff on the 8th of October, 1903, the judgment reciting that the dismissal was without prejudice. That afterwards, on the 9th day of April, 1904, the plaintiff filed a new suit for divorce in said court against said J. W. Taylor; the petition alleging the same allegations for divorce as were alleged in the first suit, and praying for an adjudication of the property rights between the plaintiff and defendant, including the property rights in the lands involved in this suit. That said cause was tried, and resulted in a judgment, on the 12th day of October, 1905, granting to the plaintiff a divorce from the said J. W. Taylor; the judgment therein reciting, among other things, that no demand was made for the adjudication of the property rights of the parties, and that same was waived without prejudice to the rights of the parties in any suit then pending or thereafter to be brought."

The parties also agreed that J. W. Taylor, prior to the 15th day of February, 1902, sold all of the 30 sections of land, except the 7 sections in controversy, to various parties, giving the names of the purchasers, price paid, and the amount in cash and in notes. Mrs. Taylor joined J. W. Taylor in the deeds to part of the land so sold, and in part she did not join in the conveyance, but the deeds were executed by Taylor alone.

[1, 2] The Supreme Court held in this case, when before that court, that the evidence showed that Meador Bros. had the legal title, and that Mrs. Hines is setting up an equity in the land, and, in order to entitle her to recover the evidence, should show that Meador Bros. are not bona fide purchasers. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 488, 6 L. R. A. (N. S.) 381. The authorities are to the effect that the burden of proof was on appellee, Mrs. Hines, to prove that Meador Bros. were not such purchasers. McAlpine v. Burnett, 23 Tex. 649, 650; Halbert v. De Bode, 40 S. W. 1018; Rogers Bros. v. Houston, 94 Tex. 403, 60 S. W. 869; Saunders v. Isbell, 5 Tex. Civ. App. 513, 24 S. W. 307; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87. The Supreme Court,

in passing upon this case, further held there was no testimony which tends to prove that the consideration was not valuable, or that it was inadequate, and that there was no evidence showing a want of good faith on the part of Meador Bros. The jury in this case did not find that the price was inadequate, or that Meador Bros. did not act in good faith in the purchase of the land. These issues were not submitted to the jury by the court. We do not think there is any testimony which would have warranted the trial court in submitting the issue of good faith of Meador Bros. in purchasing the land, or that the consideration was inadequate. We think the testimony was amply sufficient to show that the consideration paid for the land by Meador Bros. was adequate and that Meador Bros. acted in good faith in the purchase of the land.

The Supreme Court further held in this case that there was no evidence whatever which tends to show that Meador Bros. had notice of the claim of Mrs. Hines prior to the 26th day of April, 1902. We have gone over the record carefully, and we fail to find any fact before April 26, 1902, that would place appellants upon notice that Mrs. Hines owned the equitable title to the land, or any fact which would put them upon inquiry. The record title stood in the name of J. W. Taylor, husband, who had been selling the land previous thereto out of the 30 sections originally purchased by him from Crosby; he had conveyed all but 7 sections, some 23 in all. In some of the conveyances Mrs. Taylor had joined him in the conveyance, and in others she had not. Taylor listed the 7 sections of land in question with one Rudolph for sale, which he advertised in the Dallas News. Seeing this advertisement, appellant wrote to the agent, Rudolph, with reference to the price and situation of the land. They had known Rudolph some years previous, and the testimony indicates they were on friendly terms. This correspondence led to T. S. Meador, one of the firm, visiting Sherman county, to examine the land. While there he entered into a contract with the agent, on behalf of his firm, to purchase the land, and paid thereon $100 as earnest money. In compliance with a contract then made, an abstract was afterwards furnished Meador Bros., which they delivered to their attorneys for a legal opinion as to the title. The attorneys pronounced the title good. Meador Bros., in the meantime, however, requested that Taylor have his wife sign the deed, but was informed that she was sick at that time in New Mexico, and could not do so, and that Taylor alone would sign the deed. Their lawyers told them the title was good without her signature. They, however, procured an affidavit from J. W. Taylor that he owned the land, and that no one else had an interest in it. After making the investigation as to the title of the land as above

stated, they forwarded, by draft, the purchase money with the exception of the commission due Rudolph, to the Lowden National Bank, El Paso, Tex., which had been selected by Taylor to receive the money. Mrs. Hines was in Sherman county but once before the contract was entered into with Meador Bros.; and, if she ever told or intimated to any one while there that she owned an equitable title to the land, or had any interest in it, the record does not show that fact. In so far as this record shows, no one in Sherman county knew of such equity who could have given appellant any fact which would have led to the knowledge of such equity, unless it was the husband, J. W. Taylor. His sworn affidavit was made at the request of appellant, and is, "there was no other legal claimant besides himself to the land or any of them owned by him in Sherman county." We do not find a fact in the record that would charge the appellants with notice, or which would require of them to make further inquiries. The jury found that prior to February 15, 1902, appellants had no notice that appellee had or claimed an interest to the seven sections, but they do find appellants had such notice prior to April 26, 1902. The Supreme Court held there were no facts charging appellants with notice prior to April 26, 1902, and we believe this court, as well as the trial court, should be governed thereby.

[3] It is now insisted that the deposition of J. P. Fowler, taken the 26th day of July, 1909, since the former trial, makes a different case to the one before the Supreme Court. This witness appeared to have been present at the first trial, and was then in the employ of Mrs. Hines, but did not testify. By his deposition he testifies some time in the winter of 1902, "one of the Meadors came to our office [Lile & Fowler]. I cannot give the conversation between Lile and Meador in detail, for the reason that I do not recall it, and I did not hear all that was said, but to the best of my recollection Mr. Meador was contemplating buying some of the Taylor lands, and he was seeking advice regarding the title, and my recollection is that Lile advised him that the title would not be good without Mrs. Taylor's signature. Mr. Meador, upon leaving the office, made the statement to Mr. Lile that he would not purchase the land without Mrs. Taylor's signature." The witness, in answer to an interrogatory which recited the date of the contract and some other particulars of the controversy, said he believed it was in February he heard the conversation, but was never certain or definite as to which Meador or the time when the statement testified about was made. At the time the deposition was given witness was living in Bastrop county. Witness and Arthur Lile were partners while he lived in Sherman county. At that time Arthur Lile was a deputy sheriff, and he and Lile were in the land and abstract business. The ap-

pellee, Mrs. Hines, also took the deposition of Arthur Lile, who testified that he met T. S. Meador in February, 1902, and had a brief conversation with him, in which Meador "stated that he was surveying some lands he and his brother were purchasing through Mr. Rudolph." In May, 1902, a few days after this suit was filed by appellee against Taylor and Sparks, he had a conversation with S. D. Meador, in which Lile mentioned the fact that Mrs. Taylor had brought suit for the land. S. D. Meador "replied that he knew it, and would not take the land unless Mr. Taylor got the suit settled." He had been specifically requested to give his conversation with T. S. Meador. The testimony of T. S. Meador is that he was in Sherman county once only, when he went to look at the land in February, 1902, and that shortly after the 7th day of February he looked at the land, had it surveyed to locate the boundaries, made the contract with Rudolph, and that he inquired of no one in Sherman county as to the validity of the title, except Rudolph, who stated the title was as "clear as a bell." The first time S. D. Meador was in Sherman county was in May, 1902, after this suit was filed, and he testifies to the conversation with Lile on that occasion. Lile does not testify that he knew or had ever heard of Mrs. Hines' equity or claim, and no one is shown to have heard of her asserted rights in Sherman county in February, 1902. We do not think, under the facts in this case, that the advice of Lile to Meador, if made in February, that the title would not be good without Mrs. Taylor's signature, would be such statement of a fact as would put appellants upon inquiry. Lile did not state a fact, but "advised the title would not be good without Mrs. Taylor's signature." This is clearly an opinion, either based upon what he thought the law required, or upon some vague uncommunicated rumor or suspicion, and which was not made known to Meador Bros. The burden was upon appellee to show notice, actual or constructive. A mere opinion is not a fact. The opinion, if ever given to Meador, he had investigated by two reputable lawyers, who assured Meador that Mrs. Taylor's signature was not necessary to the deed. Lile knew no fact which would require investigation; if he did, appellee has not shown it. If he knew of no fact, an inquiry of him would reveal none. It is therefore beyond question, if he gave such advice, it was but an opinion of law. The advice of Lile was not actual knowledge; this need not we think be discussed.

"Constructive notice includes all other instances in which the information thus directly communicated cannot be shown, but is either conclusively presumed to have been given or received from the existence of certain facts, or is implied by a prima facie presumption of the law, in the absence of contrary proof." 2 Pomeroy's Equity, 593.

"A purchaser or person obtaining any right

in specific property is not affected by vague rumors, hearsay statements, and the like, concerning prior and conflicting claims upon the same property, and the reason is that such kind of reports and statements do not furnish him with any positive information, any tangible clue, by the aid of which he may commence and successfully prosecute an inquiry, and thus discover the real truth; his conscience is not therefore bound." Id., § 597. Wethered v. Boon, 17 Tex. 143; Martel v. Somers, 26 Tex. pp. 559–560.

There should be facts and circumstances shown by the evidence, called to the attention of the proposed purchaser, which, if followed up with reasonable diligence, would lead to the truth. Lile's statement does not rise to the dignity of a rumor or hearsay. It is but a vague, indefinite, and intangible opinion formed in his mind, upon which he advised. The facts and circumstances then surrounding the parties clearly show it to have been such, and had for the expression none other. It will be noted that Fowler is unable to state with which one of the Meadors the conversation occurred, or with any degree of definiteness when it occurred. T. S. Meador talked with Lile in February. Lile, when called as a witness by appellee, testified as to that conversation and what it was, which is not in the slightest degree the one given by Fowler. S. D. Meador had a conversation with Lile a few days after this suit was filed. This conversation, as given by Lile, in some particulars resembles the one testified to by Fowler. This evidently is the conversation which Fowler was trying to give. We think it is clear the jury so believed, for they found Meador had no notice prior to February 15th, the date of the contract entered into by Meador Bros. with Rudolph to purchase the land; but it is suggested by appellee the jury could have found this conversation occurred on the 15th. The jury did not so state in their verdict, and we see no fact which would have authorized them to have so found. Lile's testimony is that the conversation was while the surveying was being done, and all the facts indicate that after the surveying, and after the examination of the land as to its location and quality, the contract was executed, and T. S. Meador left for home. There was but one conversation at that time testified to by Lile and Meador. We see no fact which authorized the jury to say it did not occur before the 15th, but did occur on or after. We will not attribute to the jury that they found notice, prior to the 26th of April, 1902, upon this vague and uncertain testimony of Fowler, and upon Lile's vague and intangible advice or opinion. The jury evidently did not believe the evidence of Fowler, and found no notice to Meador Bros. before February 15th.

[4] It is urged by appellee that after the money was sent to the bank at El Paso in compliance with the contract, and after

April 26, 1902, and before May 10, 1902, Meador Bros. had notice of the equity of Mrs. Hines, and, having taken no steps to prevent the money from passing out of their control, they cannot claim protection as innocent purchasers as to the funds they paid the bank. The jury found that appellants had notice before May 10, 1902. This finding is supported by the evidence. The Supreme Court held in this case that, when the contract had been complied with by the delivery of the deeds for Meador Bros. by Sparks, and the money credited to Sparks by the bank, the bank then held the deeds for Meador Bros. The deposition of the cashier of that bank has been retaken in order to prove the money was not placed to the credit of Sparks when the bank received his deed, but that it was held as a memorandum check on the books of the bank. The money and the deed were in the hands of the bank, and under the contract Meador Bros. were to have the deed upon payment of the money. We see no material difference in the status of the parties as shown by the retaking of the cashier's deposition, and we believe, when the deed was received by the bank, the trade was consummated. Meador Bros. had agreed to take the land at the price, and had complied. Taylor had agreed to deed the land, and had complied. The agent selected by Taylor had the money and the deed. It was its duty to deliver the deed to Meador Bros. and the money to whom Taylor directed. The trade was consummated April 26, 1902. All the conditions of the contract had been met. The bank, by merely keeping or holding the money in one form or the other, could not defeat the contract. We think the Supreme Court has settled this question, and there is nothing for us to do but be governed thereby. The Court of Civil Appeals for the Fourth District evidently took appellee's views of this case, but on this very point the Supreme Court reversed that court. We see no reason why we should now follow the Court of Civil Appeals rather than the Supreme Court.

[5] The appellants contend there is no testimony showing that the deed from Taylor to Sparks, bearing date March 1, 1902, was in fact dated March 3, 1902, as found by the jury. All the positive testimony is that it was dated on the day it bears date. The appellee insists that the conduct of Taylor, Sparks, and Rudolph, with reference to this land, together with other circumstances, were sufficient to authorize the jury to find that the deed was dated back. We are not prepared to say there are no facts which authorize the inference drawn by the jury. It, therefore, becomes necessary to determine whether, as a question of law under the undisputed and agreed facts, the court could hold the deed void from Taylor to Sparks, and for that reason no title would pass to Meador Bros.

Mrs. Hines, formerly Taylor, brought and

filed suit for divorce against her husband March 1, 1902. The jury found that the deed was actually executed by Taylor to Sparks on the 3d of March, 1902, one day before service of citation in the divorce suit, which was had March 4, 1902. The Supreme Court has held that notice by lis pendens applies in divorce suits. Berg v. Ingalls, 79 Tex. 522, 15 S. W. 579. It has been held by the courts that notice by lis pendens does not apply until the defendant is served with citation. Cassidy v. Kluge, 73 Tex. 154, 12 S. W. 13; Smith v. Cassidy, 73 Tex. 161, 12 S. W. 14. The Supreme Court held in this case that the doctrine of notice by lis pendens does not apply in divorce suits until after citation had been served on the defendant. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, citing Smith v. Cassidy, supra. In the case of Smith v. Cassidy, 73 Tex. 161, 12 S. W. 14, the Supreme Court held, "without regard to the act by which the suit is commenced for other purposes, it seems to be universally held that for the purpose of notice by lis pendens, it does not begin until service of process, or its publication in case of an absent defendant." Taylor had no such notice, as required by law, of the suit, though filed, until he was served by citation. Until notice by lis pendens could be invoked under the statute, he had the right to sell the property of himself and wife. The fact that it was a divorce suit does not change the rule of notice under the law of pendente lite. Such we understand to be the effect of the holdings of the Supreme Court when this case was before it. A discussion, therefore, of whether the property conveyed by Taylor's deed to Sparks was separate or community property, whether article 4637, R. S. 1911, applies to separate property, or whether the deed, after notice by lis pendens, was void or voidable, we regard as immaterial questions to a decision in this case at this time, and are therefore unnecessary to decide. The deed to Sparks not being void because of notice by lis pendens, if Meador Bros. were otherwise entitled to the land under the contract, it follows a jury's finding that the deed was antedated was immaterial under the facts, and will not affect Meador Bros.' right to the land.

[6] We think the court was in error in admitting the letters of Rudolph to Meador Bros. on and after May 1, 1902, and also the telegram from Mrs. Hines to Meador Bros., dated November 26, 1902. These letters and telegrams were after Meador Bros.' rights had been fixed. There is not the slightest evidence prior to April 26th that appellants had entered into a conspiracy with Sparks and Taylor or Rudolph to defraud appellee; and the fact that they thereafter tried to protect their rights was no evidence of fraud. They certainly are shown to have been sufferers in this case. Their money had been obtained from them under circumstances which show that they had exercised all the prudence and taken all the precautions men in ordinary business affairs usually take. We do not think an effort to enforce their contract or to save their money can be properly denounced as fraudulent. However, this may result in a hardship upon appellee, and ultimately defeat her equity. The letters of Rudolph should have been limited to the purpose of showing, if they did, that the deed from Taylor to Sparks was antedated, and to the efforts of Sparks and Taylor in the transaction through Rudolph to defraud the appellee; but as to Meador Bros., who it appears were innocent victims with the appellee, they should have been allowed no probative force, and therefore, if admissible in the case at all, should have been limited. Meador Bros. objected to their admission for any purpose in so far as their rights were concerned, and as to them, they were immaterial and prejudicial.

[7] The telegram to Meador Bros. from Mrs. Hines on November 26, 1902, was sent the day after Taylor and Sparks had filed their answer interpleading Meador Bros. in the suit. This telegram requested Meador Bros. to co-operate with appellee, stating that she would fully protect them, and requesting them to consult her lawyers. We can see no purpose which this evidence could conserve other than to prejudice the jury against appellants. Appellants at that time knew neither party. Why they should do anything is not shown in the evidence or telegram, or why they should co-operate with appellee. There was no effort to pay the money back to them. She says she would fully protect them. There is no good reason why she should not have afterwards done so, or that she even in good faith offered to protect them. In admitting this telegram the court permitted appellee to make testimony in her favor against appellants, and in the hands of skillful attorneys, it would be an effective weapon before a jury to arouse their prejudice against appellants. The assertion that they would have been fully protected would likely have become a fact in the minds of the jury, especially when admitted by the approval of the court. We think this testimony was calculated to injure the rights of appellant.

The third, fourth, eighth, fourteenth, eighteenth, twentieth, twenty-first, twenty-second, and forty-fourth assignments of error are sustained. We think judgment should be rendered for Meador Bros. for the land in proportion to the purchase price paid by them for the land prior to April 26, 1902, which was the amount deposited in the Lowden National Bank, and to that extent they are bona fide purchasers of the land. The judgment of the lower court is therefore reversed, with direction that judgment be entered for Meador Bros. for the land to that extent, and under the direction of the Supreme Court in

Sparks v. Taylor, 99 Tex. 411, 90 S. W. 491, 6 L. R. A. (N. S.) 381, the court may, if the equities require, establish a lien on the seven sections for Meador Bros. for the money paid by them, or may decree to them land in proportion to the amount paid, and that Mrs. Hines have judgment for land in proportion to the amount paid after April 26, 1902, which we find to be the amount to be paid Rudolph as commission, less the $100 earnest money, and that if appellee desires, she may prosecute her cause against J. W. Taylor and the estate of John Sparks for the amount appropriated by Taylor or Sparks, and under proper allegations for the amount which she may show she is entitled to under the law and equities of the case; and, as to J. W. Taylor and the estate and heirs of John Sparks, the judgment establishing her equity in the land is affirmed, and is reversed and directed to be rendered only in so far as it affects the rights of appellant, Meador Bros.

[8] By cause No. 497 the appellee, Mrs. Hines, has brought up a transcript in this case on cross-assignments, which in effect complain of the action of the trial court in rendering judgment against her in favor of appellants for the taxes paid by them on the land since their purchase, which by agreement of parties is shown to be the sum of $1,514.71 prior to September 5, 1910, and $341.37 since September 5, 1910, on the ground that the sale to and purchase by Meador Bros. was void. As seen by our opinion in this case, we do not think the sale void, and we believe, under the contention made by appellee, it was only voidable, and that, Meador Bros. having the legal title to the land against which the taxes were assessed, we do not think they can properly be said to be volunteers in the payment of the taxes. It appears that a person in good faith and under a color of title, who claims to be the owner of real estate, may pay taxes assessed thereon, and if his title is thereafter defeated, he is entitled to be reimbursed. 37 Cyc. 1152–1154; Hensel v. Kegans, 8 Tex. Civ. App. 583, 28 S. W. 705; Hill v. Moore, 85 Tex. 348, 19 S. W. 162, last paragraph of opinion. Under the agreement there was no necessity for a finding by the jury, and if the items constituted a lien, there was no necessity of a finding thereon, and the court under the agreement and the issues could render the proper judgment. Railway Co. v. Henderson, 86 Tex. 307, 24 S. W. 381.

We think it unnecessary to discuss the cross-assignments further. In adjusting the equities the trial court can properly dispose of the taxes paid by the respective parties. The case is reversed, with directions to adjust the equities under the rules given by the Supreme Court and in accordance with this opinion. The costs of both appeals, Nos. 496 and 497, will be adjudged against the appellee, Mrs. Hines. Reversed and remanded.